GEORGE W. CORSON *vs.* THE STATE OF MARYLAND.

*Licenses to Traders, Resident and Non-Resident—Constitution-
ality of Art. 56, secs. 41 to 56, of the Code, as amended by
the Act of 1880, ch. 349—Const. U. S., Art. 1, sec. 8, and
Art. 4, sec. 2.*

Secs. 41 to 56, of Art. 56, of the Code, relating to licenses to Traders,
as amended by the Act of 1880, ch. 349, which require the same
rate of license of citizens of this State as of non-residents, are not
in violation of Art. 4, sec. 2, of the Constitution U. S.; nor are
they in conflict with Art. 1, sec. 8, thereof, which declares that
"Congress shall have power to regulate commerce among the
several States." The license required by these sections, imposed
on the business of dealers, as vendors of goods, is not a tax upon
the goods constituting the capital stock of the person obtaining
the license; but the Legislature in regulating the rate or cost of
the license has adopted as a standard, (which it had a constitu-
tional right to do,) the amount or value of the stock in trade of
the dealer, whether a citizen of the State or a non-resident.

APPEAL from the Criminal Court of Baltimore.

The case is stated in the opinion of the Court.

The assignment of errors in this case was as follows:

1. For that the Court in overruling the demurrer of
the traverser to the indictment, and entering final judg-
ment against him, held and determined that sections 41
to 56, inclusive of Article XII, of the Revised Code of
Maryland, as amended in chapter 349 of the Acts of
Assembly of Maryland, passed in 1880, are applicable to
the facts set forth in the indictment, and that the traverser
upon said facts, was bound to take out, ought to have
taken out a license thereunder, and violated said sections
of said Code, by not taking out said license.

Corson *vs.* The State.

2. For that the Court held and determined that said sections of Article XII, of the Revised Code of Maryland, amended as aforesaid, being applicable to the facts found in the indictment, were not in violation of sub-section I, of section II, of Article IV, of the Constitution of the United States, whereby " the citizens of each State shall be entitled to all privileges and immunities of citizens in the several States."

3. For that the Court held and determined that said sections 41 to 56, of Article 12, of the Revised Code of Maryland, amended as aforesaid, being applicable to the facts found in the indictment, were not in violation of sub-section 4, of section 8, of Article I, of the Constitution of the United States, whereby it is ordained, that " the Congress shall have power to regulate commerce  *  *  * among the several States."

4. For that the Court held and determined in overruling said demurrer, that a citizen and resident of the State of New York, carrying on business in said State, having his stock in trade in said. State, having no store or place of business, temporary or permanent, in the State of Maryland, and not intending or expecting to have any stock in trade in said last named State, or to be engaged ' in any trade or business in said State, otherwise than in selling by sample, and having no principal season of sale in said State, but whose only place of business was in the City of New York, in the State of New York aforesaid, where his stock in trade is kept, and whence his goods, on being sold, are shipped directly to purchasers in the State of Maryland, and other States of the Union, said citizen and resident of New York, not being the grower, maker or manufacturer of the article or articles sold by him, has no right or authority to sell by sample in Maryland, goods so kept by him in said State of New York, without first procuring a license, as provided in the 12th Article of the Revised Code of Maryland, in sections 41 to 56, amended s aforesaid.

5. For that the Court held and determined in over-ruling said demurrer, that by requiring a license to be taken out by a non-resident of the State of Maryland, before he shall be permitted to sell, or offer for sale, goods not in the State of Maryland, but in other of the States of the United States, the State of Maryland is authorized and empowered to impose taxation upon goods out of the State of Maryland, and in other of the States of the United States.

6. For that the Court held and determined, by over-ruling said demurrer, that the State of Maryland is author-ized and empowered to require a non-resident of the State of Maryland to procure a license, that he may offer to sell, or sell goods not in the State of Maryland, the amount of said license being measured by the stock in trade gene-rally kept on hand by him in the principal season of sale, in the State in which he is or may be resident, and not being or to be in Maryland, thereby imposing on said non-resident, and requiring him to pay a tax on goods not within the jurisdiction of the State, and not answera-ble to its laws, nor under the protection of the same.

7. For that the said Court, in overruling said demurrer did, in effect, rule and determine, that a citizen of New York, may not personally, or by his agent, lawfully make a contract in Maryland for the sale of goods then being in New York, without a license therefor from said State of Maryland.

8. For that the said Court in overruling said demurrer, did, in effect, rule and determine, that the State of Mary-land may lawfully impose a tax on goods imported from the State of New York into the State of Maryland, not-withstanding the prohibition of sub-section 5, of section 9, of Article I, of the Constitution of the United States.

9. For that the Court in overruling said demurrer, did, in effect, rule and determine, that said sections 41 to 56, of Article XII, of the Revised Code of Maryland, amended

as aforesaid, are applicable to cases other than traders having or intending to have a place of business, and a stock of goods for sale in the State of Maryland.

The cause was argued before BARTOL, C. J., MILLER, RITCHIE and MAGRUDER, J.

*H. D. Loney and S. Teackle Wallis,* for the plaintiff in error.

The defences on which the traverser relies are specifically set forth in the assignment of errors. It is only necessary to add that the original legislation of the State contemplated one system of business for resident, and another for non-resident traders, (Public General Laws, Art. 56, secs. 37 to 56,) but the law in regard to non-residents having been pronounced unconstitutional by the Supreme Court, (*Ward vs. State,* 12 *Wall.,* 418,) an apparent, but at all events, ineffectual attempt was made to remedy the difficulty by the Act of 1880, ch. 349. The authors of the Revised Code, apparently regarding the sectionsof the Code impeached by the Supreme Court in *Ward's Case,* (1 Code, Art. 56, secs. 37 to 40, inclusive,) as practically repealed, have omitted them from the Code as revised, (Revised Code, p. 137,) but they still remain on the statute book unrepealed, and demonstrating that the law, as it at present exists, was never intended to be applied, even if it could be applied to non-resident traders, as was attempted in this case.

The appellant refers to the following authorities: *Woodruff vs. Parham,* 8 *Wall.,* 123; *Hinson vs. Lott,* 8 *Wall.,* 148; *Ward vs. Maryland,* 12 *Wall.,* 418; *Welton vs. Missouri,* 91 *U. S.,* 275; *Brown vs. Maryland,* 12 *Wheat.,* 419; *Constitution of United States:* 1, *Sub-sec.* 4 *of sec.* 8 *of Art. I;* 2, *Sub-sec.* 5 *of sec.* 9 *of Art. I;* 3, *Sub-sec.* 1 *of sec.* 2 *of Art. IV; Revised Code of Maryland, Art.* 12, *secs.* 41 *to* 56; *Code of Public General Laws of Maryland, Art.* 56, *secs.* 37 *to* 56; *Act of* 1880, *ch.* 349.

*Charles J. M. Gwinn, Attorney-General,* for the defendant in error.

1. Secs. 41 to 56 of Art. 56, of the Code of Public General Laws, as the same were amended by the Act of 1880, ch. 349, are broad and general in their terms, and are applicable to the facts set forth in the indictment in this case.

It is, in general, within the constitutional power of every State to tax occupations, within the control of a State, by requiring persons who wish to pursue them, to obtain, before doing so, a license from certain designated officers. *Nathan vs. Louisiana,* 8 *Howard,* 80–82 ; *Welton vs. Missouri,* 91 *U. S.,* 278. Such license is a tax. No employment, thus under State control, is absolutely exempt from the liability to be so taxed. " The necessities of the Government may require that the lowest employment, as well as the most lucrative shall contribute to its support ; and, if any is exempted, motives of policy will govern the discrimination." *Cooley on Taxation, 1st Ed.,* 385 ; *Burroughs on Taxation, sec.* 77 ; *License Tax Cases,* 5 *Wallace,* 472, 473, 474.

The selling of goods by sample within a particular State is conducting a *business* in such State. As a business, it is subject to taxation, unless there be some constitutional reason exempting it from the burden. *Cooley on Taxation, 1st Ed.,* 384 ; *McCulloch vs. Maryland,* 4 *Wheat.,* 428, 429 ; *State Tax on Foreign Held Bonds,* 15 *Wallace,* 319.

2. The provisions of the Code, which are in controversy in this proceeding, as amended by the Act of 1880, ch. 349, were not in violation of Art. 4, sec. 2, sub-sec. 1, of the Constitution of the United States, because their provisions apply equally to citizens of the State of Maryland and to citizens of the other several States. *Machine Co. vs. Gage,* 100 *U. S.,* 679.

3. Secs. 41 to 56 of Art. 56 of the Code, as amended by the Act of 1880, ch. 349, are not attempts to interfere

with the exclusive power of Congress to regulate commerce among the several States, though they are applicable to the facts which are stated in the indictment and admitted by the demurrer.

The vendor, in this case, appropriated the specific quantities of teas sold for the benefit of the vendee, and engaged that such specific quantities should be shipped to him. The vendee assented to the appropriation made by the vendor and upon his terms. The property in the goods therefore passed to the vendee. *Chitty on Contracts*, 11*th Eng. Ed.*, 1881, 357; 11*th Amer. Ed.*, *Vol.* 1, *p.* 518; *Gil'et vs. Hill*, 2 *Cromp. & Mees. Rep.*, *margin pages* 535, 536; *Dickson vs. Yates*, 7 *B. & Ad.*, 313; 27 *E. C. L. Rep.*, DENMAN, C. J., 90, PARKE, J., 92. The Judge last referred to said,—" I take it to be clear that by the law of England the sale of a specific chattel passes the property in it to the vendee without delivery." * * * "Where there is a sale of goods generally, no property in them passes till delivery, because, until then, the very goods sold are not ascertained; but where by the contract itself the vendor appropriates to the vendee a specific chattel, and the latter thereby agrees to take that specific chattel, and to pay the stipulated price, the parties are then in the same situation as they would be after a delivery of goods in pursuance of a general contract. The very appropriation of the chattel is equivalent to delivery by the vendor, and the assent of the vendee to take the specific chattel, and to pay the price, is equivalent to his accepting possession. The effect of the contract, therefore, is to vest the property in the bargainee." 27 *E. C. L. Rep.*, 92; *Thompson vs. Balto. and Ohio R. R. Co.*, 28 *Md.*, 405.

In this case it was one of the conditions of the sale, as alleged in the indictment and admitted by the demurrer. that the packages of tea should be shipped by the vendor "directly" to Kenney, the purchaser, in Maryland.

Corson *vs.* The State.

There was, therefore, not only a constructive, but also an actual delivery of the property in this State. *Magruder vs. Gage*, 33 *Md.*, 348, 349 ; *Kirby vs. Jones*, 44 *Md.*, 406, 407.

Under such circumstances the effect of the sale to Kenney of the particular tea, and of its shipment to him as a purchaser, was to bring the property thus sold and shipped, within the jurisdiction of this State; to incorporate and intermix it with the mass of property in the State ; to deprive it of its distinctive character as an import, and to subject it to the taxing power of the State. *Howell vs. State*, 3 *Gill*, 23 ; *Providence Bank vs. Billings*, 4 *Peters*, 564 ; *Brown vs. Maryland*, 12 *Wheat.*, 441, 442 ; *Pervear vs. Comm.*, 5 *Wal.*, 479 ; *Waring vs. Mayor*, 8 *Wal.*, 122, 123 ; *Woodruff vs. Parham*, 8 *Wal.*, 139, 140.

It has been decided that where the business or occupation, in which a license is required by law, consists in the sale of goods, the requirement of a license tax to authorize the pursuit of such business is in effect a tax upon the goods which are sold under such license. *Welton vs. Missouri*, 91 *U. S.*, 278; *Cook vs. Pennsylvania*, 97 *U. S.*, 573 ; *Machine Co. vs. Gage*, 100 *U. S.*, 678, 679.

It is supposed to follow from the decision thus made, that if particular goods are not, at the moment of sale, within the taxing power of a State, any laws of the State, which require a license to be obtained as a condition precedent to the right to make such sale, do not apply.

Licenses are required to authorize the conduct of business in the *future*. They are intended to apply, not only to sales subsequently made of goods, which formed part of the property within the State when the licenses were required, but to goods not then in existence, or then situated beyond the limits of the State, which might, during the period of time covered by the required license, become part of the general mass of property within the State.

A license is, according to the language and meaning of the authorities, to which I have referred, a means of taxation, which the State may legitimately devise to reach movable properties, within the scope of the license, which were in the State when the license was granted, or which may be, during the term for which the license was granted, and partly by the instrumentality of a sale effected under such license, added to the mass of taxable property within the State. If the movable properties, to which such license is applicable, are not, when they are dealt in, within the limits of the State which prescribes a license as a condition precedent to their sale, and are not brought into the limits of such State by the transfer effected by such sale, and are not intended to be, it might well be argued that such movable properties were not within the taxing jurisdiction of such State. But when they are dealt in with the purpose of transferring the property in them to an owner in this State, and of bringing them by such sale, into the State, as articles of trade, within this State, the object of such dealing is to intermingle such movable properties with the general mass of property in this State, the effect is to subject them to taxation in this State, and the provisions of our license laws are as applicable to such properties, as they are to properties not in existence even when a license was granted, but which are subsequently produced in, or brought into this State.

It is plain that the effect of the transaction, which is admitted in this case to have taken place, was to incorporate and intermix the property, which was the subject of the sale, with the mass of property in the State, and to subject it to the taxing power of the State. *Appeal Tax Court vs. Patterson*, 50 *Md.*, 369, 371. A license to sell such goods was, therefore, fitly prescribed as one of the means of exercising the taxing power of the State. See opinion of Court of Appeals in *Ward vs. State*, 31 *Md.*, 283–292.

There are plain reasons why persons who sell goods by sample in a State, should be required to pay a license tax for the privilege. They need neither warehouse nor office, nor if they act as agents for persons out of the State, need they have any stock of goods within the State where they make such sales. They pursue their occupation by going from door to door, and compete with resident traders, who are subjected to the burdens of office rent and warehouse rent, and of local taxation upon their stocks of goods. The imposition of a license tax, therefore, upon persons selling goods by sample in a State, is a measure of exact justice, because it tends to place such vendors upon a footing with those residents of the State, who are engaged in the business of selling the same description of goods. *Woodruff vs. Parham,* 8 *Wallace,* 137.

The standard of charges prescribed in this State, by secs. 43 to 54, both included, of Article 56, as now existing, is not inapplicable to such a case. The amount of goods which the person selling by sample has power to control for the purposes of such sales at the season, or in the year in which such sales are expected to be made, is the proper standard of the amount of license fee to be paid.

4. The Criminal Court of Baltimore did not, it is respectfully submitted, make the ruling when it overruled the demurrer of the plaintiff in error, which is assigned as its determination in the fourth assignment of errors. It decided that a citizen and resident of the State of New York, selling goods then stored in the City of New York, by sample in this State, to a purchaser in this State, and engaging to ship the goods so sold to the purchaser in this State, contracted to sell and deliver such goods in this State, and in this manner, to bring the goods themselves within the taxing jurisdiction of the State; and might therefore properly be required to obtain a license before so doing.

5. The ruling of which the plaintiff in error complains in his fifth assignment of errors, was not made by the Court when it overruled his demurrer. The Criminal Court did not decide that the State of Maryland was authorized and empowered to impose taxes upon goods out of the State of Maryland, and in another State, or in other States. It decided only that a person who sold by sample in Maryland, to a resident of that State, goods stored in another State, under a contract made in this State, which provided that the goods should be shipped by the vendor to the purchaser in Maryland, must be deemed to have undertaken to deliver said goods in Maryland, and to be in the same position, so far as the license laws of the State are concerned, as a person who had made a similar contract in relation to like goods under his control within this State.

6. The Criminal Court of Baltimore did not determine by its ruling the amount of the license, which the plaintiff in error ought to have paid. It might properly have determined that as the plaintiff in error had entered the market in Baltimore City, for the purpose of making sales of goods, he was liable to the same extent as a trader resident in that city—that is to say, that his license ought to have been proportioned to the stock of goods, which he or his principal kept on hand, and with which he claimed the right to supply the Baltimore market. If he or his principal had no special season of sales, then the largest amount of stock kept on hand for purposes of sale at any period of the year, would seem to have been the proper measure of the amount of the license to sell goods within this State, which such person ought to have paid.

7. The Criminal Court of Baltimore did not determine by its ruling, that a citizen of New York might not personally, or by his agent, lawfully make a contract in Maryland for the sale of goods then stored in New York, without a license from the State of Maryland. It decided

in this particular case, only that a citizen of New York, who came to Maryland, and there sold goods by sample, engaging that the goods thus sold should be shipped to the purchaser, contracted in effect, to make delivery of the goods so sold in Maryland, and brought the transaction in which he was concerned, directly within the legitimate and constitutional scope of the license laws of this State.

The license charge upon any calling or occupation in a State, may be maintained where the direct and immediate purpose of such calling or occupation, is the making of contracts under which the articles agreed to be sold or bought, are to be brought within the jurisdiction of this State, and subjected to its taxing power.

8. The sale of the particular goods was made in Maryland. Under the terms of the sale the goods sold were brought into the State, and intermixed with the general mass of property in the State. The license charge imposed was not a tax or duty laid on articles exported from the State of New York, but a tax on such goods when brought within the jurisdiction of this State. The charge imposed, therefore, was not a violation of Article 1, sec. 9, sub-sec. 5, of the Constitution of the United States. See especially *Woodruff vs. Parham*, 8 *Wallace*, 136, 139.

9. The Criminal Court rightly decided that sections 41 to 56, both included of Article 56 of the Code of Public General Laws, as amended by the Act of 1880, ch. 349, were applicable to other cases than traders, having or intending to have, a fixed place of business, and a stock of goods on hand in readiness for sale in this State.

It cannot be supposed that the provisions of law which are referred to, were intended to affect only those traders, who openly maintained a particular place of business, and sold only stocks of goods which were in their actual possession upon their premises. It is not possible to imagine that it was the purpose of the General Assembly to subject such open traders to the necessity of obtaining

a license before they could sell goods, and to leave those
who had no fixed place of business, and no stock of goods
on hand free to contract for making sales and deliveries
of all goods within this State without a license, if they
could find a place within this State in which to contract,
and could obtain sufficient control over any stock of goods
outside of the State, to obtain the power to sell them by
sample. . *Woodruff vs. Parham*, 8 *Wallace*, 137.

BARTOL, C. J., delivered the opinion of the Court.

This case comes up on a writ of error from the Criminal
Court of Baltimore. The plaintiff in error was indicted
for selling by sample to one Kenney in the City of Balti-
more thirty packages of tea, without first taking out a
license therefor as required by the Code, as amended by
the Act of 1880, ch. 349.

It is alleged in the indictment that the plaintiff in error
is a citizen and resident of the City and State of New
York, that the thirty packages of tea so sold were the prop-
erty of the firm of Rosewell, Skeel and Company, resi-
dents and citizens of the City and State of New York, and
were stored in the warehouse of said firm in the City of New
York; that neither he, the plaintiff in error, nor said
Rosewell, Skeel and Company had any store or place of
business, temporary or permanent, or any stock in trade,
other than samples of tea in the State of Maryland, and
neither the plaintiff in error, nor the said Rosewell, Skeel
& Co. being the growers, makers or manufacturers of said
thirty packages of tea. The indictment further charged
that neither the plaintiff in error nor the said Rosewell,
Skeel & Co. intended to keep any stock in the City of
Baltimore, or to be engaged in any trade or business in
said city or State, otherwise than by, selling by samples as
aforesaid. That neither had any principal season of sale
in said city or State, but that Rosewell, Skeel & Co. had
their only place of business in the City of New York, where

their stock in trade was and has since been kept, and where their goods, on being sold, were then and since have been shipped directly to purchasers in the State of Maryland and other parts of the United States.

The plaintiff in error demurred to the indictment, his demurrer was overruled and having waived his right to plead over, judgment was entered against him. Whereupon he applied to have the record removed to this Court, as upon writ of error.

The subject of licenses to traders and others is regulated by Art. 56 of the Code. The *37th, 38th, 39th and 40th sections* of that Article, related only to *non-residents of the State,* and prescribed the license required to entitle them " to sell, offer for sale, or expose to sale within the limits of the City of Baltimore, any goods, wares *or* merchandise whatsoever " (with certain specified exceptions) " either by sample, card or other specimen, or by written or printed trade list or catalogue." Those sections regulated the cost of such license, required a different, and a larger amount to be paid therefor, than was required of residents of the State, and prescribed a penalty for their violation. They came before the Supreme Court of the United States for examination in *Ward vs. Maryland,* 12 *Wall.,* 418, and were adjudged to be unconstitutional and void; because they imposed a discriminating tax upon persons not permanent residents of the State, different from that imposed upon citizens of the State, and were therefore in violation of *Art. 4, sec.* 2, of the Constitution of the United States, which provides that " the citizens of each State shall be entitled to all the privileges and immunities of citizens of the several States."

Since that decision, the sections mentioned have not been attempted to be enforced, and although they have not been expressly repealed, they are properly regarded as no longer valid or operative.

By the *Act of* 1880, *ch.* 349, certain amendments have been made to the Code, which we shall proceed to notice.

*Sections* 41 *to* 57 inclusive, as originally enacted, related only to *resident traders.* By the *Act of* 1880, *sections* 41, 42 *and* 56 were repealed, and certain sections, numbered in the same way, were enacted in lieu thereof, which by their terms embrace all persons, whether residents or non-residents of the State ; while *sections* 43 *to* 55 inclusive remain unchanged.

The provisions of the Code as thus amended and now in force are as follows :

Sec. 41—Provides that "no person or corporation, other than the grower, maker or manufacturer, shall barter or sell, or otherwise dispose of, or shall offer for sale any goods, chattels, wares or merchandise within this State, without first obtaining a license in the manner herein prescribed.". (Then follow certain exceptions not necessary to be here enumerated.)

Sec. 42—Provides, "when any person, body politic or corporate, shall propose to sell or barter, or dispose of, or offer for sale anything mentioned in the preceding section, except spirituous or fermented liquors, he shall apply to the Clerk of the Circuit Court of the county in which he proposes to carry on such selling or bartering, or disposing of goods, wares, chattels or merchandise, or if he proposes to carry on such selling or bartering, or disposing of goods, wares, chattels or merchandise in the City of Baltimore, to the Clerk of the Court of Common Pleas, for a license therefor." (Then follow certain provisions not necessary to be here stated.)

Sec. 43—Provides, "Upon such application the applicant shall state to the clerk on oath, *  *  *  *  *  *  * the amount of said applicant's stock of goods, wares and merchandise generally kept on hand by him, or the concern in which he is engaged, at the principal season of sale, or if said applicant shall not have previously engaged in such trade or business, the amount of such stock he expects to keep as aforesaid."

Secs. 44 to 55, inclusive, prescribe the rate or sum to be paid for such license, graduated according to the sworn statement of the applicant's stock in trade, at the principal season of sale; ranging from $15 if the stock exceed $1000, and is not more than $1500—to $150 if the stock exceed $40,000.

Sec. 56, as amended, provides, " If the applicant for a license lives out of the county or city wherein he proposes to carry on such business of selling, bartering, or otherwise disposing of, or offering for sale such goods, chattels, wares and merchandise. Or if the applicant lives out of the State, or is unable to apply in person by reason of sickness or bodily infirmity, his or her agent may apply for license and make the affidavit as hereinbefore provided."

The foregoing statement of the provisions of the Code, as amended by the Act of 1880, is sufficient to show that the plaintiff in error clearly falls within their operation. He is charged in the indictment with selling in the City of Baltimore, by sample, thirty packages of tea, without first taking out license therefor. The language of the Code applies alike to residents and non-residents, and applies to all sales whether made by sample or otherwise.

It remains to be seen whether these statutory provisions are in any respect in violation of the Constitution of the United States.

It is clear that they are free from the objection which was declared in *Ward's Case,* to be fatal to the validity of the sections then under consideration;· as these do not impose a discriminating tax upon non-residents ; on the contrary, the same rate of license is required of citizens of the State as of non-residents. For this reason it seems to us they are not in violation of *Art.* 4, *sec.* 2, of the Constitution of the United States. *Woodruff vs. Parham,* 8 *Wall.,* 123; *Hinson vs. Lott, Id.,* 148; *Machine Co. vs. Gage,* 100 *U. S.,* 676. Nor are they, in our opinion, in conflict with *Art.* 1, *sec.* 8, of the Constitution, which de-

clares that " Congress shall have power to regulate commerce among the several States."

The statute under consideration is not in any sense a restriction upon commerce, " it does not purport to be a tax on the transit of goods through the State for commercial purposes "—It merely "imposes a tax by way of license upon a particular business or trade carried on entirely within the limits of the State."

" The power of a State to impose a tax, in the way of license, upon all pursuits and occupations within its limits has never been seriously questioned." *Nathan vs. Louisiana, 8 How.,* 80, 82 ; *License Tax Cases, 5 Wall.,* 472 ; *Welton vs. Missouri, 91 U. S.,* 278.

We have been unable to perceive the force of the objections, to the validity of the provisions of the Code, based upon their supposed conflict with the Articles and sections of the Constitution to which we have referred.

It has been argued on the part of the plaintiff in error, that the effect of the Code is to impose a tax upon property situated out of the limits of the State, and not within its jurisdiction, which it is not within the constitutional power of the Legislature to impose. In our judgment, this is not the true construction or effect of the law. It is not a tax upon the goods constituting the capital stock of the person obtaining the license; but the Legislature in regulating the rate or cost of the license, has adopted as a standard the amount or value of the stock in trade of the dealer. Domestic traders are required to pay the same rate of license. This is imposed on them as a tax upon their occupation or business as vendors of goods; it is not, and has never been considered as a tax upon their stock of goods as property ; for that is taxed under our general laws as property within the State. So where a person not residing within the State, who wishes to carry on the same business within its limits, is required to pay the same rate of license, regulated by the same standard,

C. & P. R. R. Co. and B. & O. R. R. Co. *vs.* Pa. R. R. Co. in Md.

it cannot be successfully maintained that the license is a tax upon his stock of merchandise, situated in the State in which he resides.

Being of opinion that the provisions of the Code, as amended by the Act of 1880 are constitutional and valid, the judgment of the Criminal Court will be affirmed.

*Judgment affirmed.*

(Decided 22nd July, 1881.)