City of Little Rock v. Prather et al.

CITY OF LITTLE ROCK V. PRATHER ET AL.

1. TAXES:    *Illegal, may be enjoined.*
   A court of equity has jurisdiction under the constitution to enjoin the
   collection of an illegal tax, when such injunction will present a mul-
   tiplicity of suits.

2. TAXATION.    *Of occupations, trades, etc.*
   The legislature has authority under the constitution to delegate to
   cities the power to tax occupations.

APPEAL from *Pulaski* Chancery Court.

Hon. J. W. BUTLER, Special Judge.

*Terry, C. B. Moore, J. M. Moore* and *U. M. & Geo. Rose,*
for appellants.

*Benjamin, T. B. Martin* and *G. W. Williams,* for appel-
lees.

STATEMENT.

Hon. J. W. BUTLER, Sp. J.    The act of the general as-
sembly of the state of Arkansas, for " the better govern-
ment of the cities of the first-class, and to confer additional
powers on such cities, and to provide in what manner
changes may be made in the number of aldermen and
wards of such cities," approved March 21, 1885, provides,
in the fifth subdivision of section 3 of the act, as follows :

"The city council of any such city shall also have power
to pass, by a two-thirds vote of all the members elected
thereto, an ordinance requiring that any person or persons,
company or corporation, who shall engage in, exercise,
follow or carry on any trade, business, profession or voca-
tion, within its corporate limits, shall take out a license
therefor, and pay into the city treasury, before receiving

the same, such amount of money as may be specified by such ordinance for such license, not exceeding fifty dollars ($50) per annum for any person for the trade or business, vocation or profession he may be individually engaged in, nor exceeding one hundred dollars ($100) per annum for any company or corporation, to be graded in each class as near as may be practical according to income, or amount of business done or property therein invested, and shall have full power to punish a violation of any such ordinance; provided, that neither the above limitation as to amount of license, nor anything herein contained, shall be construed as a limitation or restriction upon the power of any such city to tax, license, regulate or suppress any trade, business, calling or vocation in any case where such power previously existed or may be conferred by any other law; and that nothing herein contained shall be so construed as to apply to common laborers, artisans, mechanics and other persons working for wages by the day, week or month; and, provided further, that every such ordinance shall direct that the money realized thereunder shall be sacredly kept as a fund to be used only for the improvement of the streets, alleys and public grounds of such city, or to improve its sanitary condition."

The city council of the city of Little Rock, on the 7th day of July, 1885, under the authority of said act, passed Ordinance No. 7: "To require licenses to be taken out for certain trades, business, professions and vocations that may be engaged in, exercised, followed or carried on within the corporate limits of the city of Little Rock, and to specify the amount of such licenses and grade according to which the same shall be regulated."

A short time after the passage of the ordinance, D. J. Prather, a physician, and other persons of different callings, for themselves and all others interested, filed their

complaint in the Pulaski chancery court against the city of Little Rock, the clerk, the treasurer and collector of the city. The scope of the bill is:

That the city council of the city of Little Rock, after having levied a tax of five mills on the dollar, on all real and personal property within said city for all purposes, unlawfully and in violation of the constitution and laws of the state, passed an ordinance to require licenses to be taken out for certain business, professions and vocations that may be engaged in, followed or carried on within the corporate limits of said city (the ordinance being set out in full in the bill, and styled "Ordinance No. 7.")

That plaintiffs desire to and will exercise and follow their respective professions and vocations within said city, and that the defendant, the city of Little Rock, unless restrained, will undertake to enforce said ordinance, and plaintiffs and other citizens will be subjected to numerous prosecutions, arrests and suits in the attempt to enforce said ordinance.

That under said ordinance there are many citizens engaged in the various callings, whose incomes, gross sales and capital invested therein cannot be taxed; that there are numerous citizens and tax-payers who will be required to pay and contribute largely in excess of their proportionate part of the burden provided for under the ordinance, and that the taxation imposed is not equal, uniform or just, that it is in violation of the constitution of the state and of the constitution of the United States.

Plaintiffs prayed that the city of Little Rock, her officials, etc., be enjoined from enforcing said ordinance, that the ordinance be declared void, and for a temporary restraining order until a final hearing of the cause, etc.

The city of Little Rock answered the complaint, stating : That "Ordinance No. 7" was adopted by the concurrent

vote of two-thirds of all the members elected to the city council, and that in framing and adopting said ordinance all of the requirements of the act of the general assembly of the state, approved March 21, 1885, were observed. That the license taxes required therein are *not* unduly burdensome or oppressive, nor violative of any constitutional requirement of equality or uniformity, and that the said act authorizing the passage of said ordinance is not contrary to the constitution of the state, nor are any of the provisions of said ordinance contrary to any of the laws of said state, nor to the constitution of the state, nor of the United States.

That the ordinance was published and notice given that all persons having complaints to make against the classifications and gradings of the licenses, should file them in the office of the city clerk. That all the complaints filed were investigated, and "Ordinance No. 15," amending Ordinance No. 7, was passed by the concurrent vote of two thirds of all the members of the city council, " Ordinance No. 15" being set forth in full in the answer.

After the adoption of Ordinance No. 15, it is alleged, in the answer, that the intention of the city authorities was to proceed against persons violating the provisions of said ordinance in no other manner than as provided for in said Ordinance No. 7, as amended.

With defendant's answer there was a demurrer to the complaint. The several grounds were in effect:

*First*—That the bill did not show cause for equitable relief.

*Second*—There was an adequate remedy at law.

*Third*—That the bill sought to enjoin proceedings of a criminal or quasi-criminal nature.

*Fourth*—That there was a defect of parties, plaintiffs and defendants.

*Fifth*—The court had no jurisdiction.

The demurrer to the complaint was overruled, and the cause was submitted for final hearing upon the complaint and amendments thereto, the answer of defendants and exhibits, and the motion to dissolve the temporary injunction.

The court refused to dissolve the temporary injunction and adjudged and decreed Ordinance No. 7 and the amendments thereto, to be null and void, and made the injunction perpetual. Defendants appealed to this court.

### OPINION.

Counsel for appellants submit that this is a suit to enjoin criminal prosecutions for the violation of a city ordinance. We notice:

*First*—The question of the jurisdiction of the Pulaski chancery court.

1. Jurisdiction to restrain illegal tax.

The case of the *City of Little Rock v. Barton et al., 33 Ark., 436,* was similar to the present case, in many respects. The plaintiffs, in behalf of themselves and others interested, prayed that the city of Little Rock be enjoined from collecting the license tax required of brokers by an ordinance of the city, the penalty for the violation of the ordinance being a fine, imprisonment, etc.

The court held that the chancery court had jurisdiction by the act of the legislature of 1873, which, in express terms, conferred the jurisdiction. See *Mansfield's Dig., sec. 3731;* also, *sec. 13, art. 16, Const. 1874*

The case of *Taylor, Cleveland & Co. v. The City of Pine Bluff, 34 Ark., 603,* was a proceeding in chancery by the plaintiffs and others interested, to enjoin the enforcement of a city ordinance, a violation of which subjected the party to an arrest and fine.

In that case, the court decided that " so much of the bill as sought to enjoin the city from prosecutions for violations of the ordinance was without the usual ambit of chancery relief." * * * After quoting *section 13, art. 16, Const. of 1874*, the court added: " This widens the range of equity jurisdiction, and will sustain the bill to the extent of giving the court power to inquire into the validity of the exactions, and if found void so to declare it, and restrain the city authorities from its collection."

A later case, *Waters-Pierce Oil Co. v. The City of Little Rock, 39 Ark., 412*, it is contended, settles the law differently.

But that case was never intended to undermine *Little Rock v. Barton et al.*, nor *Taylor, Cleveland & Co. v. Pine Bluff*. For the court, while disclaiming the jurisdiction to enjoin criminal prosecutions, did restrain the sheriff from distraining and selling property for the non-payment of a license tax imposed by a city ordinance. Section 5 of the act of 21st of March, 1885, conferring the authority upon cities of the first class, gives a civil remedy for the violation of the ordinances to be passed under the act, in addition to the criminal proceeding.

And a court of equity has jurisdiction, under the constitution, to enjoin the collection of an illegal tax where such injunction will prevent a multiplication of suits.

Has the legislature the authority, under the constitution, to delegate to cities of the first class the power to tax occupations?

The act says: " Persons engaged in any trade, business, profession or vocation, shall take out a license therefor. * * * "

It is sometimes difficult to determine whether a license is intended as a regulation or as a tax, but in this case there can be none.

The conferring of power upon cities of the first class to require a license from persons engaged in the useful trades, callings and professions, the amount of the license fees, and the uses to which the fund shall be applied, clearly indicate that the raising of revenue was the object. The license fees are, in effect, taxes, and the authority to impose them was a grant of the taxing power of the state.

In the matter of taxation, the legislature has plenary power, except as restricted by the state or federal constitutions, over property and persons within the limits of the state, and this taxing power the legislature " may delegate with the necessary restrictions to the state's subordinate political and municipal corporations to the extent of providing for their existence, maintenance and well-being, but no further."    *Art. 2, sec. 23, Const. 1874.*   This power extends to every known object of taxation.

Judge Cooley says: "It reaches to every trade and occupation, to every object of industry, use or enjoyment, to every species of possession."

In *Nathan v. Louisiana, 8 How., 80,* it is stated that, "The right of a state to tax its own citizens for the prosecution of any particular business or profession within the state has not been doubted. And we find that in every state money or exchange brokers, vendors of merchandise of our own or foreign manufacture, retailers of ardent spirits, tavern keepers, auctioneers, those who practice the learned professions, and every description of property, not exempted by law, are taxed."

It is said in *People v. Coleman, 4 Cal., 49,* that, "The power of the legislature to tax trades, professions and occupations is a matter completely within its control, and, unless inhibited by the constitution, eminently belonging to and resting in the sound discretion of the legislature. This principle has been repeatedly maintained by the

courts of almost every state in the union, and reiterated by the decisions of the Supreme Court of the United States."

That callings and pursuits are the subjects of taxation, see *License Cases, 5 How., 593; Brown v. State Maryland, 12 Wheat., 444; Jones v. Page & Stallworth, 44 Ala., 658; San Jose v. S. J. & S. C. R. R. Co., 53 Cal., 476; Burch v. Mayor, 42 Ga., 600; Simmons v. State, 12 Mo., 268; St. Louis v. Sternberg, 69 ib., 303; Stewart v. Potts, 49 Miss., 749; Newton v. Atchison, 31 Kans., 151; Carson v. State, 57 Md., 266; Ex parte Robinson, 12 Nev., 267.*

Attention has been called to certain sections of our constitution which, it is insisted, limit and restrict the taxing powers of the legislature.

* * * "All property subject to taxation shall be taxed according to its value, * * * making the same equal and uniform throughout the state." *Sec. 5, art. 16, Const. 1874.*

This section imposes no restriction upon the legislature in the taxing of property, and sections eight (8) and nine (9) of the same article refer to limitations of taxation by the state and county upon property as such, and have no reference to license taxes.

"No municipal corporation shall be authorized * * * to levy any tax on real or personal property to a greater extent in one year than five mills on the dollar of the assessed value of the same." *Sec. 4, art. 12, Const.* This section has reference to property only. A tax on occupations is, in no sense, a tax on property.

These provisions of the constitution do not, in terms, limit the power of the legislature to delegate to municipal corporations the right to tax occupations.

"The usual provisions in the constitutions of the different states concerning taxation do not prohibit the legislature from imposing or authorizing municipal authori-

ties to impose taxes upon trades, special professions and occupations." *2 Dillon Municipal Corporations, sec. 793.*

Section 5, of article 16, above quoted, is subject to this proviso: "The general assembly shall have power from time to time to tax hawkers, peddlers, ferries, exhibitions and privileges in such manner as may be deemed proper."

From this it is argued that there is an implied restric- tion upon the taxing power of the legislature over occupa- tions, except those mentioned, according to the maxim of interpretation, " that the expression of one thing is the ex- clusion of another." .

Admitting that this is true, as to the power of the legis- lature to tax any other callings (for state revenue), it does not follow that the legislature may not delegate to mu- nicipal corporations the power to tax all occupations. This question, at various times and under different consti- tutions, has been passed upon by this court.

In *Washington v. State, 13 Ark., 752*, it was said : * * * " The constitutional provisions concerning revenue were intended to apply to state revenue, and are not, and were not, applicable to taxes levied for county purposes.

"All such local taxes for county or municipal purposes might well be authorized, if self-imposed, according to the discretion of the people of such county or town through their magistrates or officers, elected and directly responsible to them. * * * But the imposition of taxes granting licenses by counties or towns may be au- thorized or regulated by legislation, and that legislation is not necessarily controlled or limited by the provisions of the constitution in regard to state revenues."

In *Baker v. State, 44 Ark., 134*, the previous decisions of the court, relating to this question, were reviewed. Chief Justice Cockrill, in reaffirming *Washington v. State*, said : " The framers of the present organic law, knowing the

·construction that had been put upon the provisions of the ·constitution of 1836, bearing on this subject, adopted them without modification that can affect the question now presented here, and we must presume they intended to adopt with them the meaning the court had engrafted on them.    This was recognized in *Barton v. City*, *sup.*, and we regard the question as closed against any other view we might be disposed to take of it."

Conceding that the legislature had the right to confer ·power upon cities of the first class to tax occupations, the ·remaining question is: Does the ordinance conform to the law?

For the "better government of cities of the first class," ·and for their maintenance and well-being, the legislature ·conferred the " enlarged and additional powers " set forth in the enabling act.

The power, mentioned in the fifth subdivision of section three, was cautiously granted.    To pass an ordinance taxing occupations it required the concurrence of two-thirds ·of all the members elected to the city council—the tax was to be graded, as near as practicable, according to the income, business or property invested, and was limited in amount; laborers, artisans, mechanics and persons working for wages by the day, week or month, were exempted from taxation, and the fund arising from the license tax was "to be used only in the improvement of the streets, alleys and public grounds, or to improve the sanitary condition of such cities."

The objection made to Ordinance No. 7, do not require an examination of it, section by section, throughout the numerous sub-divisions defining the various classes and ·specifying the amount of the license tax.

The methods for carrying into effect this grant of power ·were necessarily committed to the discretion of the city

council; and any abuse of that discretion, which was not apparent on the face of the ordinance, should be established by proof.

The answer denies the allegations of the bill, to the effect that the ordinance failed to conform to the act, and no testimony was taken in support of such allegations, consequently in determining the validity or invalidity of the ordinance we have nothing to look to except the ordinance itself.

Now, an inspection of that document does not disclose the fact that the classifications adopted by the council were in any degree arbitrary, or that the license tax demanded of each class was not graded as near as was " practicable according to incomes, or amount of business or property therein invested," or that the amounts fixed were oppressive or unjust to any class, or to any individual of that class, or that any difference in the manner of grading licenses in the different classes had been made without good and sufficient reason.

It is also objected that there is a discrimination against corporations in violation of the fourteenth amendment of the constitution of the United States. No corporations complain in the bill that the act, or the ordinance, denies to them "the equal protection of the law"; it is not alleged that corporations are discriminated against. It is argued, however, that such is the case. We think the supposed discrimination is not real. The rule of equality only requires that the law shall be applied impartially upon "all persons in similar circumstances."

By the law and the ordinance, two or more persons associating themselves as a partnership, and carrying on business as such, might be taxed not exceeding $100; a dozen persons associating themselves in business as a cor-

31—46

poration, could be taxed no more; there is no discrimination in this against the persons composing the corporation.

All tax laws are more or less unequal in their practical workings, and in the assessment of taxes on occupations, hardships in particular cases, are likely to occur.

If there should be injustice or oppression in any class, and it should be made to appear in a proceeding for that purpose, the ordinance might be held void to that extent. But if this should be so, it would afford no sufficient reason to set aside the whole ordinance.

The license tax complained of was "self-imposed"; the city of Little Rock, through its officials, passed the ordinance requiring licenses to be taken out, and the ordinance on its face does not disclose a want of conformity to the act.

The decree of the Pulaski chancery court is reversed, the injunction dissolved, and the bill dismissed.

Hon. B. B. BATTLE did not sit in this case.