WHITE, COUNTY TREASURER *v.* ADAMS.

5-2290                               343 S. W. 2d 793

Opinion delivered March 13, 1961.

*Terry Shell*, Prosecuting Attorney, by, *Julian B. Fogleman*, Deputy Prosecuting Attorney, for appellant.

*Atlee Harris*, for appellee.

GEORGE ROSE SMITH, J. By Act 48 of 1945 a privilege tax of $100 a week, payable to the county, was levied upon every person practising any form of fortune telling. Ark. Stats. 1947, § 84-1520. The appellee, a professional fortune teller, brought this suit to enjoin the officials of Crittenden county from collecting the tax and to obtain a decree declaring the statute to be unconstitutional. The principal attacks upon the act are, first, that the tax is so high as to demonstrate a legislative intention to prohibit rather than to regulate, and, second, that the act violates the due process and equal protection clauses of the Fourteenth Amendment. The chancellor held the act to be invalid and enjoined its enforcement.

The proof shows that the appellee has followed her trade in Crittenden county for at least two years. At first her income averaged more than $200 a week, and it is stipulated that for a period of 100 weeks the appellee compiled with the statute by paying privilege taxes totaling $10,000. Later on, however, several fortune tellers were licensed to practise in Memphis, across the river from Crittenden county, and as a result of this competition the appellee's income declined to about $50 a week. This suit was then brought, upon the theory that the tax destroys the appellee's right to engage in a lawful calling.

The fallacy in the appellee's argument lies in its assumption that fortune telling is a vocation to be pursued as a matter of common right. It is not. The lawmakers are entitled to believe that no human being has the power of foretelling future events and that therefore fortune telling may be a fraudulent means of preying upon the ignorant, the superstitious, and the gullible.

Consequently it has been uniformly held that the state, in the exercise of its police power, may constitutionally prohibit fortune telling altogether. *Mitchell* v. *Birmingham,* 222 Ala. 389, 133 So. 13; *Williams* v. *Jenkins,* 211 Ga. 10, 83 S. E. 2d 614; *Davis* v. *State,* 118 Ohio St. 25, 160 N. E. 473; *State* v. *Neitzel,* 69 Wash. 567, 125 P. 939, 43 L. R. A., N. S. 203, Ann. Cas. 1914A, 899.

If the legislature can absolutely forbid the practice of fortune telling, palmistry, and the like, it must logically follow that the same result may be achieved by the levy of a tax that is made so high as to prevent anyone from engaging in the business with profit. *Bridewell* v. *Bessemer,* 35 Ala. App. 337, 46 So. 2d 568. "The use of the taxing power to destroy a business which might be validly prohibited violates neither the due process nor the equal protection clause." Morgan, Protection of Natural and Fundamental Rights, 2 Ark. L. Rev. 203, 210.

In citing a number of Arkansas cases the appellee overlooks the fact that the language which she considers to be favorable to her position had reference to occupations of common right. The distinction was clearly made in *McGriff* v. *State,* 212 Ark. 98, 204 S. W. 2d 885, where we invalidated a prohibitory tax upon the lawful business of photography. It was said: "A rule frequently emphasized is that when a legislative body having power to tax a certain subject matter actually imposes such a burdensome assessment as effectually to destroy the right to perform the act or use the property, then validity of the enactment depends upon the nature and character of the thing or operation destroyed. If so great an abuse of the taxing power is manifest as to render valueless natural and fundamental rights which no free government could consistently violate, it is the duty of the judiciary to hold such act unconstitutional." A similar thought was expressed in *Baldwin* v. *Blytheville,* 212 Ark. 975, 208 S. W. 2d 458: "Second, it [the tax] must not be so excessive as to prevent one from engaging in a lawful occupation, or amount to the suppression of a business or occupation which is not in

itself unlawful or injurious to public health or morals. *Rogers* v. *Rogers,* 174 Ark. 486, 295 S. W. 708; *Helena* v. *Russworm,* 190 Ark. 601, 79 S. W. 2d 995.''

On the other hand, where the occupation to be licensed is merely a privilege, such as the business of selling liquor, the issuance of the license is a matter ''not of right, but purely of legislative grace, and may be extended, limited or denied without violating any constitutional right.'' *Blum* v. *Ford,* 194 Ark. 393, 107 S. W. 2d 340.

The appellee also cites *Conway* v. *Waddell,* 90 Ark. 127, 118 S. W. 398. That case involved a tax upon peddling, which is not inherently injurious to the public welfare or morals, and, further, the opinion must be read in the light of later cases such as *Ex parte Byles,* 93 Ark. 612, 126 S. W. 94, 37 L. R. A., N. S. 774, and *Davis* v. *Hot Springs,* 141 Ark. 521, 529, 217 S. W. 769, 771. See also the discussion of the *Conway* case in Morgan's article, *supra,* p. 210, and Penix, Tax Immunity of Natural or Common Rights in Arkansas, 2 Ark. L. Rev. 411, 414.

In adopting the statute now in question the General Assembly certainly knew that a weekly tax of $100 would effectively prohibit the practice of fortune telling in all the smaller communities of the state, where a palmist's income could not be expected to equal the amount of the tax. Hence we must recognize the fact that the legislature undoubtedly intended for the statute to embody prohibition as well as regulation. Inasmuch as the vocation of fortune telling is not one of common right the appellee has no constitutional basis for challenging the tax.

Reversed and dismissed.

HOLT and ROBINSON, JJ., dissent.

SAM ROBINSON, Associate Justice, dissenting. The majority are holding to be valid a statute which permitted ''Madame Rose'' to ply her trade as long as she was very

successful because she had no effective competition from fortune tellers in a sister state and she could therefore pay the enormously high tax of $100 per week, but when competition became keen and she could no longer pay the tax, she must go out of business. Evidently the legislature did not consider that fortune telling was inherently injurious to the public health and morals, or such occupation would have been prohibited altogether. This was not done. Successful fortune tellers can still operate. Madame Rose practiced her trade for about two years, during which time she paid taxes totaling about $10,000.

Act 236 of 1929 provides for a tax of $100 per year to be paid to the State for the privilege of telling fortunes. Act 48 of 1945 amended the 1929 act by providing for a county tax of $100 per week to be paid in addition to the $100 yearly State tax. Both acts declare it to be a privilege to practice fortune telling. Thus it is definite and certain that in providing for the tax the legislature relied on the State's power to tax privileges. The power to tax a privilege is given to the legislature by Art. 16, § 5 of the Constitution of 1874. This section of the Constitution gives the legislature the power "to tax hawkers, peddlers, ferries, exhibitions and privileges."

In *Conway* v. *Waddell*, 90 Ark. 127, 118 S. W. 398, the city of Conway had adopted an ordinance to regulate and license street peddling and provided a tax of $25 per day to obtain a license to peddle. This Court held that the tax was excessive and the ordinance was therefore void. This Court said: "There is no prohibition of the business, but an express permission to carry it on upon the conditions prescribed. The tax was manifestly both for the purpose of regulation and revenue. The title of the ordinance declares that it was for the purpose of license and regulation, but the council also had the power to tax for revenue. *City of Little Rock* v. *Prather*, 46 Ark. 478. Considered as an ordinance to license and to tax for regulation and also for revenue, it was void on its face. It is inconceivable that it would require the sum of $25

per day to reimburse the city for the expense of issuing the license and the efficient police surveillance of the business, and the amount is still unreasonable when, in addition to the above, it is considered as a tax for the purpose of raising revenue for the city.'' The Court points out that § 5438, Kirby's Digest [Ark. Stats. 1947, § 19-203] gives cities and incorporated towns the power to tax peddlers and that the statute is authorized by Art. 16, § 5 of the Constitution. As above pointed out, this is the same section that authorizes a tax on fortune tellers.  .

In the case at bar the State has not prohibited the exercise of the privilege of fortune telling, and the assumption that such was the intention of the legislature is not justified when it is considered that if prohibition had been the intention the legislature could have very easily so provided by adopting an act to that effect. In fact, an act prohibiting the practice altogether would require only a majority vote, whereas the act assessing the tax required three-fourths.

Although Art. 16, § 5 of our Constitution gives the legislature the power to tax privileges, peddlers, ferries, etc., it does not give the legislature the power to assess a tax so high as to effectively prevent all except the most favored and successful from engaging in such occupation. The majority attempt to distinguish the case at bar from *McGriff* v. *State,* 212 Ark. 98, 209 S. W. 2d 885. It is stated that in the *McGriff* case we held invalid a tax upon a lawful business of photography. Fortune telling is also a lawful business. We have no statute making it unlawful. On the contrary, the statutes authorize the issuance of licenses to carry on such business. True, it is a privilege, but nevertheless lawful, and, moreover, it was specifically held in the *McGriff* case that the operation of a photographic business as conducted in that case was a *privilege.* The case was decided on the theory that the business involved was a privilege, and the statute assessing an unreasonably high tax was declared invalid. True. some courts have indicated that a lawful business which is a privilege may be destroyed merely by the imposition of an unreasonable and ex-

cessive tax that is out of all proportion to taxes assessed against other lawful businesses, but our Court has held otherwise, as shown herein, and I choose to follow our own cases on that point. I firmly believe that if the legislature had intended to abolish a lawful business which is a privilege, it would have done so by adopting an act that would be plain and unequivocal and not by assessing excessive taxes, leaving it to the courts to guess at the real intention of the legislature in adopting the act. And moreover, if the lawful business of fortune telling can be abolished by assessing excessive taxes, any other business that happens to be a privilege can be destroyed in like manner. Therefore I respectfully dissent.

I am authorized to say that Mr. Justice Holt joins in this dissent.