CITY OF MOUNTAIN HOME, ARKANSAS et al *v.*
David K. DRAKE et al

83-228                                   663 S.W.2d 738

Supreme Court of Arkansas
Opinion delivered February 6, 1984

*Richard Nelson* and *David H. White,* for appellant.

*Osmon, Wilber & Moore,* by: *John E. Moore,* for appellee.

STEELE HAYS, Justice. The City of Mountain Home adopted Ordinance No. 589 in 1980, known as the Occupation License Ordinance, imposing an annual fee on persons, firms and corporations for the privilege of engaging in a business, trade or vocation within the city. The ordinance covered a wide variety of enterprises, with fees ranging from a low of $25.00 for carpet and chimney cleaning to as much as $1,400 for manufacturers employing seventy or more

persons. The bulk of the fees fell between $50.00 and $150.00.

Appellees filed suit against the City of Mountain Home, and its officials, the appellants, alleging that the ordinance is void on a number of grounds. The Chancellor sustained the ordinance in part, but invalidated portions of it, and both sides have appealed. We think it was error to invalidate portions of the ordinance on the arguments raised.

The Chancellor correctly found that the authority to impose an occupation licensing fee is expressly delegated to the city by the legislature under Ark. Stat. Ann. § 19-4601, which gives cities the right to classify and define any trade, business profession, or calling and to fix the amount any person, firm, or corporation shall pay for the privilege of doing business based on the amount of goods carried in stock, or the kind of vocation, but prohibits classification based on earnings or income.

Appellees, who are taxpayers under the ordinance, contended that parts of the ordinance violated the prohibition in § 19-4601 against a classification based on earnings or income, and their argument was sustained by the Chancellor with respect to some fifteen segments of the ordinance, wherein a fee was imposed according to the number of units being operated. For example: ambulance operators were taxed $50.00 for each ambulance, barber and beauty shops $7.50 per chair, pool halls $5.00 for each billiard table, restaurants according to seating capacity, manufacturing companies according to the number of employees, and motels were taxed at $3.50 per unit. Similar parts of the ordinance were also invalidated where the businesses were classified according to size or units.

Appellants maintain the ordinance is not based on income or earnings and, therefore, does not violate the statute. We sustain the argument, as we think the statute was intended only to prohibit a tax imposed according to the earnings of a trade or business, such as a percentage of annual sales, that is, a tax specifically related to income or volume. There was no proof that because one business was

larger (in that it had more barber chairs, for example) than another it had greater earnings, and we are unwilling to assume that a motel with six units has greater earnings than a motel with five, it may well be just the reverse. Moreover, it is an obvious fact that one manufacturer with thirty or forty employees may be operating efficiently and productively, whereas one with a great many more employees may be operating at a loss. Nor is the seating capacity of restaurants any sure criteria that earnings will conform to size, one may be small and expensive, another large but relatively inexpensive.

The statute should not be construed as prohibiting any tax which takes into account the size of an enterprise, so long as the amount is not unreasonable and a reasonable relationship exists between the goods and services afforded by the city and the distinctions drawn as to size. The number of ambulances operating on the streets of a city has a direct bearing on the goods and services provided by the city in terms of street maintenance, traffic control, police regulation and even fire protection. We think, therefore, that a tax of $50.00 on an ambulance firm may properly vary depending on whether the firm operates one ambulance or five, without becoming a tax on income, even though the five-ambulance firm may be expected in the normal course to gross more than the one-ambulance firm. The important significance is that city services are burdened more heavily by the larger ambulance firm and therefore distinctions in size are not inappropriate. These same considerations apply equally to the other classifications which were found by the Chancellor to be in violation of the statute, whether motels, mobile homes, milk trucks, filling stations ($50.00 for the first pump, $7.50 for each additional pump) or manufacturers.

Apellees defend the Chancellor's holding with the case of *Davies* v. *Hot Springs*, 141 Ark. 521, 217 S.W. 769 (1920). There we held a tax imposed by the City of Hot Springs violated the statute insofar as it attempted to impose a tax of $25.00 on lawyers who had been in practice less than ten years and $50.00 on those who had been in practice ten years or longer, with the following observation:

If the length of service in the practice of law or medicine can be made the basis of classification, it is because length of service denotes probable earning capacity, as a seasoned lawyer or physician of longer experience can probably earn a greater income than one of less experience, but to permit a classification based on the distinction as to length of service necessarily results in a basis of earnings or income which is expressly forbidden by the statute. It is difficult to see how men of the same learned profession can be put in different classes for purposes of taxation except upon the basis of difference in earning capacity or income and any other classification would be purely arbitrary.

We concur in that reasoning, as we can see no basis for concluding that a lawyer who has practiced over ten years places a greater demand on the city's goods and services than one who has practiced a shorter period. Thus, the distinction, bearing no reasonable relationship to the taxing needs of a city, becomes nothing more than a classification based on income and, hence, a violation of the statute. We note, too, that the disputed ordinance makes no attempt to classify business activity on the basis of length of time such businesses have operated.

The right of the legislature to delegate taxing power to municipal corporations is provided for in Article II, Section 23 of our Constitution, and implementing legislation for occupation taxes began as early as 1885. *City of Little Rock* v. *Prather,* 46 Ark. 471 (1885). Taxing methods by municipalities similar to the ordinance in question have been generally upheld. See *State Board of Tax Commissioners of Indiana* v. *Jackson,* 283 U.S. 527 (1931); *City of Miami Beach* v. *Kaiser,* 213 So.2d 449 (1968). In *Dicks* v. *Naff, Mayor,* 255 Ark. 357, 500 S.W.2d 350 (1973) this court approved a levy of 1% on the gross receipts of motels, hotels and restaurants by the City of Eureka Springs, although the ordinance there was challenged on different grounds. The opinion recites governing rules of law applicable to the taxing powers of municipalities:

In *Madden* v. *Kentucky,* 309 U.S. 83 (1940), where a

state tax set different rates on bank deposits in the state from those out of state, the United States Supreme Court held that the tax was consistent with due process and equal protection. The court said that "in taxation, even more than in other fields, legislatures possess the greatest freedom in classification. Since the members of a legislature necessarily enjoy a familiarity with local conditions which this Court cannot have, the presumption of constitutionality can be overcome only by the most explicit demonstration that a classification is a hostile and oppressive discrimination against particular persons and classes." Again it was emphasized that "[T]he burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it."

We conclude that the Chancellor erred in holding that certain parts of Ordinance 589 as amended are in violation of Ark. Stat. Ann. § 19-4601.

On cross-appeal David Drake contends the Chancellor should have excluded him completely from the effects of the ordinance because the statute exempts from an occupation tax any persons, firms, or corporations, "who pay a tax to the city, town or State on gross incomes, on premium income . . ." If cross-appellant's interpretation of the statute were to prevail it would operate as a wholesale repeal of the occupation tax on which municipalities depend. That could hardly be thought to be the legislative intent, in spite of the fact that the provision exempting persons paying a tax on gross incomes was added to § 19-4601 in 1919, well before the adoption of The Income Tax Act of 1929, Ark. Stat. Ann. § 84-2001. Whatever may be said of the argument, the state income tax expressly applies only to *net* income. *Morley* v. *Remmel,* 215 Ark. 434, 221 S.W.2d 51 (1949). We have the same view as the Chancellor with respect to this point.

Reversed on direct appeal, affirmed on cross-appeal.

HICKMAN, PURTLE and HOLLINGSWORTH, JJ., dissent.

DARRELL HICKMAN, Justice, dissenting. I believe the

ordinance in this case does impose a fee based upon income, and I would uphold the chancery court. In the case of *Davies v. Hot Springs*, 141 Ark. 521, 217 S.W. 769 (1920), we held that such an ordinance was invalid. Obviously, a service station with more than three pumps has more income than a service station with one pump. Why shouldn't the city impose a tax on someone operating just a service station rather than on the number of pumps? The same is true regarding all the other suspect categories.

I do note in passing that fortune tellers are still out of favor with the law. In *White, County Treasurer v. Adams*, 233 Ark. 241, 343 S.W.2d 793 (1961), we upheld a privilege tax of $100 a week payable to the county levied against fortune tellers. Fortune tellers have to pay $1,220 to tell fortunes in Mountain Home. This is more than it costs a bank with more than fifty million in assets to do business.

I would affirm the chancellor.

PURTLE and HOLLINGSWORTH, JJ., join in this dissent.