SAMUEL S. CARLTON and others, in equity, *vs.* EBEN NEWMAN.

Franklin.     Opinion August 6, 1885.

*Taxes. School-district. School-house. R. S., c. 11, § 56. Constitutional law.*

The collection of an entire school-district tax, assessed without authority of law, may be perpetually enjoined, on a bill brought by all the tax payers of the district jointly, or by any number thereof on behalf of themselves and all the others.

Such a bill is maintainable upon the ground of the inherent jurisdiction of equity to interpose for the purpose of preventing a multiplicity of suits.

When municipal officers proceed to erect a school-house for a district under the provisions of R. S. c., 11, § 56, they can legally expend therefor so much money only as the district have voted for that purpose.

A special act of the legislature purporting to authorize an assessment of an excess of money expended by the municipal officers above the sum voted by the district, must be construed strictly.

The legislature cannot constitutionally authorize the assessment upon the polls and estates of a school-district of an excess of money expended by the

municipal officers above the sum voted by the district for the erection of a school-house, in the absence of any vote by the district to raise such excess.

ON report of bill, answer and agreed statement of facts.

Bill in equity by ten inhabitants and tax payers of school district No. 5, in the town of Weld, against the collector of taxes to restrain him from collecting a school-district tax.

The district voted to build a new school-house and voted to raise five hundred dollars for that purpose. A disagreement arose as to the location, occasioning an appeal to the municipal officers who located and erected a school-house at an expense of eight hundred twenty-five dollars and fifty-six cents, exceeding the district assessment by three hundred two dollars and sixty-six cents. This sum was claimed to be due the town from the district. In 1883 the legislature passed an act (special statute, c. 348,) to authorize the municipal officers of the town to assess a tax on the district, and in October following the assessment was made upon the district for two hundred seventy-seven dollars and sixty-five cents by the assessors. It is the collection of this tax that the bill is brought to restrain.

*Drummond and Drummond* and *Joseph C. Holman*, for the plaintiffs, cited: *Powers* v. *Sanford*, 39 Maine, 183; *Knowles* v. *School District*, 63 Maine, 261; *Harris* v. *School District*, 28 N. H. 58; *Wilson* v. *School District*, 32 N. H. 118; *Junkins* v. *Union School District*, 39 Maine, 220; Story, Eq. Jur. § § 64 k, 457, 469, 492, 493, 495, 497; High, Injunctions, § § 12, 53, 329, 459; Kerr, Injunctions, c. 4, § 49; Burroughs, Taxation, c. 18, § 126, c. 21, § 143; *Olmstead* v. *Board*, 24 Iowa, 33; *Dows* v. *Chicago*, 11 Wall. 108; State Railroad Tax cases, 92 U. S. 574, 614; *Cummings* v. *National Bank*, 101 U. S. 153;

*E. O. Greenleaf*, for the defendant, contended that, as the town has advanced a sum of money in excess of the tax, the district ought to pay whether legally liable or not. Injunctions are discretionary and are granted in aid of justice and not to defeat it. Justice in this case can only be done by requiring the district to reimburse the town.

Again the plaintiffs must show that their rights were interfered with in some way before they can seek relief by injunction. *Pratt* v. *Lamson,* 6 Allen, 457.

VIRGIN, J. While the defendant admits the facts he denies that equity can enjoin the collection of the pretended tax even on the assumption that it was assessed without the authority of law and therefore void; and he contends that the only remedies open to the plaintiffs and all the other tax-payers on whose polls and estates the tax has been assessed are simply such as the law affords, viz. : each to defend the action of debt against himself, provided the collector shall proceed to enforce the collection by such action under the provisions of R. S., c. 6, § 141; or, in case the collector shall resort to the more usual mode, of seizing their individual property under the other statutory provisions for the collection of taxes, then for each tax-payer whose property shall be taken to bring an action for damages, or recover back the money when collected; and these remedies are said to be "plain, adequate and complete."

If a tax against an individual be illegal simply by reason of some irregularity in its assessment, as for instance on account of over-valuation, or if laid on property which the tax-payer did not own at the time, he would then have ample remedy therefor by a seasonable application for an abatement. R. S., c. 6, § § 68, 69; *Gilpatrick* v. *Saco,* 57 Maine, 277. Moreover, it is generally held that a bill to restrain the collection of a tax cannot be maintained on the sole ground of its illegality. *Greene* v. *Mumford,* 5 R. I. 472; *Sherman* v. *Leonard,* 10 R. I. 469; *Guest* v. *Brooklyn,* 69 N. Y. 506; *Loud* v. *Charlestown,* 99 Mass. 208; *Whiting* v. *Boston,* 106 Mass. 89, 93; *Hunnewell* v. *Charlestown,* 106 Mass. 350. There must be some allegation presenting a case of equity jurisdiction. *Dows* v. *Chicago,* 11 Wall. 108; *Hunnewinkle* v. *Georgetown,* 15 Wall. 547; *State R. R. Tax Cas.* 92 U. S. 575, 614. Cases cited 2 Dest, Tax. 676–7. In *Hunnewell* v. *Charlestown, supra,* brought by a single plaintiff, the court add : "The question is not affected by the fact that there are others, whether few or many, who are

subjected to a like assessment by the same proceedings of the city council and who propose to contest their liability."

But we are of opinion that when it appears that an entire school-district tax is illegal because assessed without authority of law, a bill to enjoin its collection brought by all of the tax-payers of the district jointly on whose polls and estates the tax has been assessed, or by any number thereof on behalf of themselves and all the others similarly situated, may be sustained upon the ground of the inherent jurisdiction of equity to interpose for the purpose of preventing a multiplicity of suits; that although each tax-payer has some legal remedy, it is grossly inadequate when compared with the comprehensive and complete relief afforded by a single decree.

The general doctrine coeval with equity proceedings, asserted in a multitude of decisions, that in certain cases where parties have some remedy, equity may interpose and take cognizance for the purpose of preventing a multiplicity of suits, was declared by Chan. KENT to be "a favorite object with a court of equity," *Brinkerhoff* v. *Brown*, 6 Johns. Ch. 151; and the number of parties and the multiplicity of actual or threatened suits, as stated by COMSTOCK, J., sometimes justify a resort to equity when the subject is not at all of an equitable character and there is no other element of equity juri-diction. *N. Y. & N. H. R. R.* v. *Schuyler*, 17 N. Y. 608. And yet the precise extent and limitations of the doctrine are still unsettled, the decisions being quite inharmonious even as to its fundamental grounds. It is said that "bills of peace" were founded upon this ground — to quiet unnecessary litigation as to titles and where one person claimed or defended a right against many or many against one. Sto. Eq. § 864. In these bills originally, whether brought by or in behalf of many against one, or by one against or on behalf of many, "chancery confined its jurisdiction to cases wherein there was some common interest in the subject matter of the controversy, or a common title from which all their separate claims and all the questions at issue arose; it not being enough that the claims of each individual being separate and distinct, there was a community of interest merely in the question of law

or fact involved, or in the kind and form of remedy demanded and obtained by or against each individual." Pom. Eq. § 268. But at an early day the limitations began to yield and the jurisdiction to extend. Thus in *York* v. *Pilkington*, 1 Atk. 282, Lord Chan. HARDWICKE at first intimated that the bill would not be maintained for want of any general right or privity among the parties and because the nature of the defendants' claims was different and that therefore injunction would not quiet the possession as other persons not parties might likewise claim a right. But after argument he changed his opinion saying bills might be maintained although there were no privity between the plaintiffs and defendants nor any general right on the part of the defendants and when many more might be concerned than those before the court.

This jurisdiction has continued to extend until it comprises a great variety of cases which do not come strictly within bills of peace but which courts have declared to be analogous thereto and within the principles thereof and in which there was no common title or community of interest in anything save the question at issue and the remedy sought. Thus in a recent case where the owner of lands on a river sought by a bill against them jointly to restrain several owners of mines from depositing the debris thereof in the river and its tributaries whereby it floated down and was deposited upon the plaintiff's lands, on demurrer, SAWYER, J., sustained the bill, saying : "The rights of all involved depend upon identically the same question, both of law and fact. It is one of the class of cases, like bills of peace, and bills founded on analogous principles, where a single individual may bring a suit against numerous defendants, where there is no joint interest or title, but where the questions at issue and the evidence to establish the rights of the parties and the relief demanded are identical." *Woodruff* v. *North B. G. M. Co.* 8 Saw. U. S. C. C. 628. This case has been cited and approved by this court in the very recent case of like nature, *Lockwood* v. *Lawrence*, 77 Maine 297.

So in a late English case : The bursting of the plaintiff's reservoir occasioned an inundation which damaged the property

of many persons. The statute commissioners issued certificates to such as satisfactorily proved their damages and entitled them to costs and could be enforced by action at law. Fifteen hundred of the certificates were alleged to be invalid; and to avoid a multiplicity of suits against itself the bill was brought by the plaintiff against five holders of the certificates "on behalf of themselves and all other the persons named in any of certain pretended certificates." On demurrer, the bill was sustained first by V. C. KINDERSLER; and on appeal by Ld. Ch. CHELMSFORD who said : "Perhaps, strictly speaking, this is not a bill of peace, as the rights of the claimants under the alleged certificates are not identical; but it appears to me to be within the principle of bills of this description. The rights of the numerous claimants all depend upon the same question." And after remarking that if the certificates had no validity, the executions could not be set aside until considerable expense had been incurred by many, he concluded : " It seems to me to be a very fit case by analogy, at least, to a bill of peace, for a court of equity to interpose and prevent the unnecessary expense and litigation which would be thus occasioned and to decide once for all the validity or invalidity of the certificates upon which the claims of all the parties depend." *Sheffield Waterworks* v. *Yeomans*, L. R. 2 Ch. Ap. 8, 12. See also *N. Y. & N. H. R. R.* v. *Schuylor, supra*; *Board Sup.* v. *Deyoe*, 77 N. Y. 219.

In *Brinkerhoff* v. *Brown, supra*, a bill by various distinct judgment creditors to render effectual their executions against their debtor was sustained in order to prevent a multiplicity of suits, although their only community of interest was in the relief demanded. See also *Cadigan* v. *Brown*, 120 Mass. 493 and *Ballou* v. *Hopkinton*, 4 Gray, 324, wherein one of the reasons assigned for holding jurisdiction in equity was that at law each owner must bring a separate action to obtain a remedy for his particular injury and equity prevents a multiplicity of suits.

After an exhaustive examination of the subject both upon principle and authority, an eminent legal author sums up his conclusions as follows : "Under the greatest diversity of circumstances and the greatest variety of claims arising from

unauthorized public acts, private tortious acts, invasion of property rights, violation of contract obligations, and notwithstanding the positive denials by some American courts, the weight of authority is simply overwhelming that the jurisdiction may and should be exercised either on behalf of a numerous body of separate claimants against a single party, or on behalf of a single party against a numerous body, although there is no " common title," nor " community of right" or of "interest in the subject matter," among these individuals ; but where there is and because there is merely a community of interest among them in the questions of law and fact involved in the general controversy, or in the kind and form of relief demanded and obtained by or against each individual member of the numerous body.

.  . The same overwhelming weight of authority effectually disposes of the rule laid down by some judges as a test, that equity will never exercise its jurisdiction to prevent a multiplicity of suits, unless the plaintiff or each of the plaintiffs, is himself the person who would necessarily and contrary to his own will be exposed to numerous actions or vexatious litigation. This position is opposed to the whole course of decision in suits of the third and fourth classes from the earliest period down to the present time." Pom. Eq. § 269.

These principles apply to the case at bar. They have been applied to a large number like this. Each of the plaintiffs has, of course, some remedy at law, or else equity could not interpose upon the ground mentioned. But at law he must wait and suffer the wrong before he can begin his action for redress, and when his legal remedy is exhausted, it is not much else than nominal when viewed in contrast with the full relief in equity, which decides in advance of actual litigation, once for all, the validity or invalidity of the tax.

The court, in R. I., although they in *Greene* v. *Mumford,* 5 R. I. 472, and in *Sherman* v. *Leonard,* 10 R. I. 469, referred the complainants therein to their remedies at law, (the validity of the assessment in each case on the complainants only being involved,) nevertheless declared the court would enjoin the collection of a tax where the question involves the validity of the whole tax. *Sherman* v. *Benford,* 10 R. I. 559.

So the U. S. Supreme court, although they had denied juris-diction in suits brought by a single plaintiff in the cases already cited, they also disavowed in the State R. R. Tax Cas. *supra*, any purpose of fixing any absolute limitation in restraining the collection of illegal taxes; and in *Cummings* v. *Nat'l Bank*, 101 U. S. 157, say: " We are of opinion that when a rule or system of valuation is adopted by those whose duty it is to make the assessment, which is designed to operate unequally and violate a fundamental principle of the constitution, and when this rule is applied not solely to one individual, but to a large class, that equity may interpose to restrain the operation of this unconstitutional exercise of power. "

That our opinion is sustained by the weight of judicial authority to-day, see Dill. Mun. Corp. § § 731–736; Bur. Tax. § 143, and cases; Pom. Eq. § § 258–260, 1343, and cases in notes

Was the tax assessed by authority of law? If any part is illegal, the whole is, therefore the provisions of R. S., c. 11, § 78, and c. 6, § 142, do not apply.

1.   Under the general statutory provisions. It is common knowledge that political sub-divisions, such as towns, created for the more efficient administration of the affairs of the state, have only such power of taxation as is delegated to them by the state.   In the provisions of R. S., c. 11, defining the duties and obligations of towns and school districts in relation to education, we find no authority for assessing a tax on a school district for the purpose of building a school-house, unless: (1.) The district, at a legal meeting thereof called for the purpose, vote to raise the money therefor, (c. 11, § 48,) or to borrow it, (§ § 81, 83); or (2.) The town, on application of five voters of the district, under a proper article, deeming the sum voted by the district insufficient, vote a larger sum. (§ 51 ; *Powers* v. *Sanf'*, 39 Maine, 183) ; or (3.) The town, on the written opinion of the school committee that the district unreasonably neglects or refuses to raise money for a school-house, such as the wants of the district require, shall vote a sum, § 52.   No action was ever taken under § § 51 or 52, but the district, under § 48, voted to

raise by assessment, five hundred dollars.   There is no general statutory warrant for the tax, unless it is found in § 56.

The authority of the municipal officers to build a school-house for a school district, is derived solely from § 56.   When they had "decided where the school-house should be placed," and seasonably certified "their determination to the clerk of the district," their authority ceased *pro hac.*   Then it became the duty of the district to "proceed to erect the house as if determined by a sufficient majority of" its voters.   But when the district had neglected "for sixty days to carry such determination into effect," then it became the duty of the municipal officers, "at the expense of the district, if need be, to purchase a lot for said house, and cause it to be erected."   § 56.

What house were the municipal officers directed by the statute to "cause to be erected?"   "Said house" for which they might "purchase a lot;" "the house" which the statute directed the district to "proceed to erect" on the location fixed by the municipal officers ; the house which it might build under its vote, viz : a five hundred dollar house.   The building committee of the district could not bind the district by expending more money than the district voted.   *Wilson* v. *School District*, 32 N. H. 118, recognized in *Junkins* v. *Union Sch. Dist.* 39 Maine, 220. The legislature could not have intended to confer on the municipal officers unlimited power as to the "expense" to which they might subject the district ; for the decision of that question is rightfully vested in the discretion of the tax-payers, except in the two instances coming under § § 51 and 52, when all the voters of the town take part in the decision.   It is very evident, therefore, that the municipal officers transcended their authority and could not bind the district by thus virtually undertaking to hire money on the district's credit ; nor could the payment by the treasurer, of the orders drawn by them for the expenditure in excess of the sum voted by the district, create any liability or debt of the district to the town.   The relation of creditor and debtor the law does not allow to be created in that manner.   *Brunswick* v. *Litchfield*, 2 Maine, 32 ; *Hampshire* v. *Franklin*, 16 Mass. 84. We find no authority for the tax in the general statutes.

Did the special act of 1883, c. 348 afford a legal foundation for it? We think not. Assuming that the legislature might constitutionally confer authority for assessing on the district the excess mentioned, did the act answer the object? Giving to it that strict construction which well established rules of law require to be put upon statutes affecting the property of the citizen, and by which it may be taken from him, as by taxation (*Merritt* v. *Village of Portchester*, 71 N. Y. 309 and cases therein cited; Burr. Tax, § 128 ; 1 Dest. Tax, 257), the assessment was without legal authority, it having been made, not by the "municipal officers," as provided in the act, but by the " assessors," an entirely different and distinct board of officers. R. S., c. 3, § 12. Moreover, the act authorized the tax to be assessed for the purpose of reimbursing the town "for making repairs on the school-house," and not for building a school-house, as the fact was. No money was paid by the town for "making repairs" on the district's school-house. Districts may raise money for both purposes, § 48 ; and the school agent may appropriate a certain per cent of the school money to "repairs," but not to building, § 93. They are considered by statute distinct matters. Courts can give effect to legislative enactments only to the extent to which they may be made operative by legal construction of the language in which they are expressed ; and cannot make defective enactments carry out fully the purposes which may have occasioned them. *Swift* v. *Luce*, 27 Maine, 285.

Moreover the last clause in the act satisfies us that the legislature must have supposed that the object of the act was the very common one of validating a former assessment which was defective for some irregularity therein ; for, as said by MELLEN, C. J., " we cannot, without disrespect to the legislature, presume they intended, *ipso facto*, to create a debt from one man or corporation to another," *Brunswick* v. *Litchfield*, *supra;* and in that of PARKER, C. J., "It certainly must be admitted that, by the principles of every free government, and of our constitution in particular, it is not in the power of the legislature to create a debt from one person to another, or from one corporation to

another, without the consent, express or implied, of the party to be charged." *Hampshire* v. *Franklin, supra.*

> *Bill sustained.   Collection of the tax*
> *perpetually enjoined.*

WALTON, DANFORTH, LIBBEY, FOSTER and HASKELL, JJ., concurred.