KEHRER *v.* STEWART.

ERROR TO THE SUPREME COURT OF THE STATE OF GEORGIA.

No. 152.    Argued January 24, 25, 1905.—Decided February 27, 1905.

As a tax upon the seller of goods is a tax upon the goods themselves, and a tax upon goods sold in one State delivered to a common carrier and consigned to the purchaser in another State is an illegal interference with interstate commerce, a State cannot impose a privilege tax on agents of packing houses as to meats shipped to him from another State merely for distribution to purchasers from his principal; but where the Supreme Court of the State has held that the tax is void as to interstate shipments and applies only to the domestic business of the agent in the ordinary course of trade, and all other such agents, whether of domestic or foreign packing houses, are subject to the tax, that construction will be accepted by this court as in reality a part of the statute itself, and the tax is within the power of the State and is not as to his domestic business an interference with interstate commerce even though all of the goods sold by an agent may be shipped to him from another State.

Nor is such a tax void because it is laid upon the agents themselves and cannot be apportioned between the interstate and the domestic business carried on by the same person.

While such a tax might not apply to an agent whose domestic business was purely nominal and strictly incidental to his interstate business, it does apply to one whose domestic business is a definite, although a minor, part of his business in the State as the application of the tax does not depend on the greater or less magnitude of the business.

Where such a tax is imposed alike upon the managing agent both of domestic and foreign houses, it does not deny to the agent of a foreign house the equal protection of the laws.

A State has the right to classify occupations and impose different taxes upon different occupations. The necessity for, and the amount of, the tax are exclusively within the control of the state legislature, and, in the absence of discrimination against citizens of other States, its determination in regard thereto is not open to criticism in this court.

Such a tax does not impair the obligation of, or affect, any contract previously made between the principal and the agent. The power of taxation overrides any agreement of an employé to serve for a specific sum.

THIS was an action by Kehrer against the tax collector of the county of Fulton in Georgia to recover back a tax of $200 with interest and costs, paid to Stewart under protest, such tax having been assessed against Kehrer under the general tax law of the State, of December 21, 1900, which provided that there should be assessed and collected "upon all agents of packing houses doing business in this State, two hundred dollars in each county where said business is carried on." Petitioner charged the law to be a violation of the Fourteenth Amendment.

Defendant demurred to the petition, and this demurrer being overruled, a writ of error was taken from the Supreme Court, which reversed the judgment of the court below in overruling the demurrer. 115 Georgia, 184. Plaintiff thereupon amended his petition, insisting that the tax denied him due process of law as well as the equal protection of the law, impaired the obligation of his contract with the firm, and was also in conflict with the commerce clause of the Constitution of the United States. The defendant demurred to the amended petition. The court sustained the demurrer and the Supreme Court affirmed its action. 117 Georgia, 969.

*Mr. Alexander W. Smith* for plaintiff in error:

The act is obnoxious to the Fourteenth Amendment. *Butchers' Union* v. *Crescent City Co.*, 111 U. S. 476; *Allgeyer* v. *Louisiana*, 165 U. S. 578. The act practically singles out

the manager of Nelson Morris & Co. It is limited in any event to chief clerks and managers and arbitrarily and unreasonably selects this class of persons while other persons with similar privileges are not affected. The act has been construed by the state court to impose a tax on the occupation of agents of packing houses whether the business is wholly interstate or wholly domestic. The act is silent as to any distinction between the tax on the agent of a principal doing interstate business and of one doing a domestic business.

The state court holds the act covers both. The legislature never undertook to classify agents for the conduct of domestic business as a separate class from agents for the conduct of interstate business. Each would be an agent of a packing house. Each would be in the same class. Each would have the same occupation. One must pay the tax—the other must not. Thus analyzing the construction of the act by the Supreme Court of Georgia, it is plainly violative of the Fourteenth Amendment. *Ex parte Virginia,* 100 U. S. 339; *Barbier* v. *Connelly,* 113 U. S. 27, 31; *Yick Wo* v. *Hopkins,* 118 U. S. 356; *Gulf, Col. & S. Fé Ry. Co.* v. *Ellis,* 165 U. S. 168; *Railroad Co.* v. *Matthews,* 174 U. S. 76.

The act in this case is nothing more than a revenue law. Its caption so declares it, and the court below so treats it. *Linton* v. *Childs,* 105 Georgia, 567, 573; *In re Yot Sang,* 75 Fed. Rep. 984; *Fraser* v. *McConway,* 82 Fed. Rep. 257, 259; *Randolph* v. *Builders' & Painters' Supply Co.,* 106 Alabama, 501; *N. Y. Life Ins. Co.* v. *Smith,* 41 S. W. Rep. 680; *St. Louis &c. Ry.* v. *Williams,* 49 Arkansas, 492; *Denver &c. Ry.* v. *Outcalt,* 2 Colo. App. 395; *Atchison &c. Ry.* v. *Baty,* 6 Nebraska, 37; *O'Connell* v. *Lumber Co.,* 71 N. W. Rep. 449; *Jacksonville* v. *Carpenter,* 77 Wisconsin, 288; *State* v. *Dering,* 94 Wisconsin, 588; *Pearson* v. *Portland,* 69 Maine, 278; *Burrows* v. *Brooks,* 71 N. W. Rep. 460; *Middleton* v. *Middleton,* 54 N. J. Eq. 692; *State* v. *Goodwill,* 33 W. Va. 179; *Kuhn* v. *Common Council,* 70 Michigan, 538; *State* v. *Hinman,* 65 N. H. 105; *State* v. *Penwyer,* 65 N. H. 116.

The act is void as a ˆburden upon, and a regulation of interstate-commerce. *Caldwell* v. *North Carolina,* 187 U. S. 622; *Crutcher* v. *Kentucky,* 141 U. S. 47; *Lyng* v. *Michigan,* 135 U. S. 161, 166; *Osborne* v. *Florida,* 164 U. S. 650; *Pullman Co.* v. *Pennsylvania,* 141 U. S. 18, and cases cited; *Pullman Co.* v. *Adams,* 189 U. S. 420; *Allen* v. *Pullman Co.,* 191 U. S. 172, 183; *Leloup* v. *Mobile,* 127 U. S. 640, 647; *Asher* v. *Texas,* 128 U. S. 129; *West. Un. Tel. Co.* v. *Alabama,* 132 U. S. 477; *Ratterman* v. *West. Un. Tel. Co.,* 127 U. S. 411; *McCall* v. *California,* 136 U. S. 110; *Pollock* v. *Farmers' L. & T. Co.,* 157 U. S. 582; *Adams Express Co.* v. *Ohio,* 165 U. S. 234; *Stockard* v. *Morgan,* 185 U. S. 34; *Atlantic Company* v. *Philadelphia,* 190 U. S. 162.

The purpose underlying the phraseology of the act is to indirectly reach non-resident packers who necessarily do business through agents while local houses escape. For history of legislation in this respect see *Stewart* v. *Beef Co.,* 93 Georgia, 12.

*Mr. John C. Hart* for defendant in error:

The act as construed by the state court is not violative of the constitution of Georgia. The power of the General Assembly of Georgia to classify for the purpose of taxation is unquestionable. Nor is there anything in the constitution of Georgia which inhibits the taxation of certain vocations or occupations and to exempt, by failing to tax, other occupations. Cooley on Tax., 384; 1 Desty on Tax., 96; *Williams* v. *Fears,* 110 Georgia, 594; *Cutliff* v. *Mayor,* 60 Georgia, 598; *Shepard* v. *Commissioners,* 59 Georgia, 536; *Davis & Co.* v. *Mayor,* 64 Georgia, 129; *Singer Mfg. Co.* v. *Wright,* 33 Fed. Rep. 126; *American Harrow Co.* v. *Shaffer,* 68 Fed. Rep. 750; *Mutual Reserve Life Ass'n* v. *Augusta,* 109 Georgia, 79.

The act is not violative of the Fourteenth Amendment. The object of the Amendment was to preclude the several States from discriminating against citizens of other States. Cooley on Tax., 99; 1 Desty on Tax., 223; *Slaughter House*

*Case,* 16 Wall. 36. The specific tax levied upon persons engaged in the conduct of a particular business is in no sense obnoxious to the Fourteenth Amendment. *Williams v. Fears,* 110 Georgia, 584. The Constitution imposes no restriction on the States in the levy of taxes other than that there shall be no discrimination against citizens of other States.

The contention of the plaintiff in error that the act in question deprives him of his liberty and property without due process of law is answered by an unbroken line of authorities to the effect that due process of law within the meaning of the Fourteenth Amendment is secured if the laws operate on all alike and do not subject the individual to an arbitrary exercise of the powers of government. *Davidson v. New Orleans,* 96 U. S. 105; *Giozza v. Tiernan,* 148 U. S. 657; *Hager v. Reclamation District,* 111 U. S. 709.

The statute is not an illegal interference with interstate commerce. It does not fall within *Caldwell v. North Carolina,* 187 U. S. 622. See *Stone v. State,* 117 Georgia, 292. The plaintiff in error was engaged in domestic as well as interstate business.

MR. JUSTICE BROWN, after making the foregoing statement, delivered the opinion of the court.

This case arose upon the following state of facts: Nelson Morris & Co., citizens of Illinois, were engaged, in the city of Chicago, in the business of packing meats for sale and consumption, and also had a place of business in Atlanta, Georgia, where they sold their products at wholesale, having in their employ several clerks and helpers, one of whom was the petitioner, who was employed as chief clerk and manager at a salary of $25 per week. The firm did not have anywhere within the State of Georgia any packing house for slaughtering, dressing, curing, packing cr manufacturing the products of any animals for food or commercial use, but took orders, which were transmitted and filled at Chicago, the meats sent

to Atlanta and there distributed in pursuance of such orders. Certain meats were also shipped from Chicago to Atlanta without a previous sale or contract to sell. These were stored in the Atlanta house of the firm in the original packages, and were kept and held for sale, in the ordinary course of trade, as domestic business. They were offered for sale to such customers as might require them, and until sold were stored and preserved and remained the property of the firm.

1. It was admitted by the Supreme Court of Georgia in its opinion, and by both parties hereto, that a tax upon the seller of goods is a tax upon the goods themselves, *Brown* v. *Maryland*, 12 Wheat. 419; *Welton* v. *Missouri*, 91 U. S. 275; and that a tax upon goods sold in another State, delivered to a common carrier and consigned to the purchaser in the State of Georgia, was an illegal interference with interstate commerce. *Caldwell* v. *North Carolina*, 187 U. S. 622; *Norfolk &c. Ry. Co.* v. *Sims*, 191 U. S. 441; *Stone* v. *State*, 117 Georgia, 292. It was therefore held that the tax, so far as applied to meats sold in Chicago and shipped to the petitioner in Georgia for distribution, could not be supported; but that so far as the petitioner was engaged in the business of selling directly to customers in Atlanta, he was engaged in carrying on an independent business as a wholesale dealer, and was liable to the tax.

This decision was correct. In carrying on the domestic business, petitioner was indistinguishable from the ordinary butcher, who slaughters cattle and sells their carcasses, and in principle it made no difference that the cattle were slaughtered in Chicago and their carcasses sent to Atlanta for sale and consumption in the ordinary course of trade. Upon arrival there they became a part of the taxable property of the State. It made no difference whence they came and to whom they were ultimately sold, or whether the domestic and interstate business were carried on in the same or different buildings. In this particular the case is covered by that of *Brown* v. *Houston*, 114 U. S. 622, wherein it was held that coal mined

in Pennsylvania and sent by water to New Orleans, to be sold in open market there on account of the owners in Pennsylvania, became intermingled with the general property of the State, and liable to taxation under its laws, although it might have been after arrival sold from the vessel on which the transportation was made, without being landed, and for the purpose of being taken out of the country on a vessel bound to a foreign port. The same principle was applied in *Emert* v. *Missouri*, 156 U. S. 296, in which a license tax upon peddlers of goods, which made no distinction between residents and products of the State and of those of other States, was sustained. To the same effect is *Machine Company* v. *Gage*, 100 U. S. 676.

The case is readily distinguishable from that of *Crutcher* v. *Kentucky*, 141 U. S. 47, wherein a state law requiring a license from agencies of foreign express companies was held to be a regulation of interstate commerce, so far as applied to a corporation of another State engaged in interstate business, although as *incidental* thereto it did some local business by carrying goods from one point to another in the State of Kentucky. The court observed that while the local business was probably quite as much for the accommodation of the people of the State as for the advantage of the company, this did not obviate the objection to the tax; that the regulations as to license and capital stock were imposed as conditions on the companies carrying on the business of interstate commerce, which was manifestly the principal object of its organization. "These regulations are clearly a burden and a restriction upon the commerce. Whether intended as such or not they operate as such. But taxes or license fees in good faith imposed exclusively on express business carried on wholly within the State would be open to no such objection."

The same doctrine was applied to telegraph companies in *Leloup* v. *Port of Mobile*, 127 U. S. 640, wherein a general license tax upon the telegraph company was held to affect its entire business, interstate as well as domestic or internal, and was unconstitutional. This case, however, must be read

in connection with *Postal Telegraph Cable Co.* v. *Charleston,* 153 U. S. 692, wherein we held that a license tax upon a telegraph company on business done exclusively within the State, and not including any business done to or from points without the State, and not including any business done for the Government of the United States, was an exercise of the police power, and not an interference with interstate commerce. In line with this case is that of *Ratterman* v. *Western Union Tel. Company,* 127 U. S. 411, in which a percentage tax assessed upon receipts of telegraph companies partly derived from interstate commerce and partly from commerce within the State, and which were capable of separation, but were returned and assessed in gross, and without separation or apportionment, was held invalid in proportion to the extent that such receipts were derived from interstate commerce, but valid as applied to receipts from messages within the State. To the same effect is *Western Union Tel. Co.* v. *Alabama,* 132 U. S. 472.

So, if the stock of a transportation company be taxed by taking as a basis of assessment such proportion of its capital stock as the number of miles of railroad over which its cars are run within the State bear to the whole number of miles over which its cars are run throughout the United States, such assessment does not impinge upon the power of Congress. *Pullman's Car Company* v. *Pennsylvania,* 141 U. S. 18. The case is still simpler, if the tax be imposed in terms upon the domestic commerce, seeing that the corporation is free to abandon the business taxed if it sees fit. *Pullman Company* v. *Adams,* 189 U. S. 420; *Allen* v. *Pullman Company,* 191 U. S. 171.

The only difficulty in this case arises from the fact that the tax is laid not in terms upon the domestic business, nor upon the gross receipts or profits which might be apportioned between interstate and domestic business, but is a gross sum imposed upon the managing agent of packing houses, regardless of the fact that the greater portion of the business may

be interstate in its character. This contingency, however, is met by the case of *Osborne* v. *Florida,* 164 U. S. 650, wherein a license tax imposed upon express companies doing business in Florida had been construed by the Supreme Court of that State as applying solely to business of the company done within the State, and not to its interstate business. Accepting this construction of the state statute as in reality part of the statute itself, we held that it did not in any way violate the Federal Constitution. The statute was sustained, notwithstanding the fact that ninety-five per cent of the business was interstate in its character, and only five per cent consisted of carrying goods and freight between points within the State of Florida. *Crutcher* v. *Kentucky,* 141 U. S. 47, was distinguished as one which prohibited the agent of a foreign express company from carrying on business at all in that State without first obtaining a license from the State. Said the court: "It has never been held, however, that when the business of the company which is wholly within the State, is but (not) a mere incident to its interstate business, such fact would furnish any obstacle to the valid taxation by the State of the business of the company which is entirely local. So long as the regulation as to the license or taxation does not refer to and is not imposed upon the business of the company which is interstate, there is no interference with that commerce by the state statute."

So, in the case under consideration it was expressly held by the Supreme Court of Georgia that that part of the Nelson Morris & Company's business, which consisted in shipping goods to Atlanta to fill orders previously received, the goods being delivered in accordance with such orders, was interstate commerce, not subject to taxation within the State, and that, so far as applied to that business, the tax was void. Accepting this construction of the Supreme Court, we think the act, so far as applied to domestic business, is valid. The record does not show what proportion of such business is interstate and what proportion is domestic, although it is con-

ceded that most of the business is interstate in its character. If the amount of domestic business were purely nominal, as, for instance, if the consignee of a shipment made in Chicago upon an order filled there, refused the goods shipped, and the only way of disposing of them was by sales at Atlanta, this might be held to be strictly incidental to an interstate business, and in reality a part of it, as we held in *Crutcher* v. *Kentucky*, 141 U. S. 47; but if the agent carried on a definite, though a minor, part of his business in the State by the sales of meat there, he would not escape the payment of the tax, since the greater or less magnitude of the business cuts no figure in the imposition of the tax. There could be no doubt whatever that, if the agent carried on his interstate and domestic business in two distinct establishments, one would be subject and the other would not be subject to the tax, and in our view it makes no difference that the two branches of business are carried on in the same establishment. The burden of proof was clearly upon the plaintiff to show that the domestic business was a mere incident to the interstate business.

2. The act in question does not deny to the petitioner the equal protection of the laws, as the tax is imposed alike upon the managing agent both of domestic and of foreign houses. In its first opinion in this case the Supreme Court held that the tax was a vocation or occupation tax, and that it was not designed to apply to every agent or employé of the company, but only to the managing or superintending agent, who is the *alter ego* of the principal by whom he is employed. There is no discrimination in favor of the agents of domestic houses, and, while we may suspect that the act was primarily intended to apply to agents of *ultra* state houses, there is no discrimination upon the face of the act, and none, so far as the record shows, upon its practical administration. As we have frequently held, the State has the right to classify occupations and to impose different taxes upon different occupations. Such has been constantly the practice of Congress under the internal revenue laws. *Cook* v. *Marshall County*, 196 U. S.

261, 275. What the necessity is for such tax, and upon what occupations it shall be imposed, as well as the amount of the imposition, are exclusively within the control of the state legislature. So long as there is no discrimination against citizens of other States, the amount and necessity of the tax are not open to criticism here.

3. The argument that the tax impairs the obligation of a contract between the petitioner and Nelson Morris & Company is hardly worthy of serious consideration. The power of taxation overrides any agreement of an employé to serve for a specific sum. His contract remains entirely undisturbed. There was no stipulation for an employment for a definite period; and if there were, it is inconceivable that the State should lose this right of taxation by the fact that the party taxed had entered into an engagement with his employer for a definite period. The tax is an incident to the business, and probably might under the terms of their contract be charged up against the employer as one of the necessary expenses of carrying it on.

The judgment of the Supreme Court of Georgia is

*Affirmed.*