## GRAMLING v. MAXWELL, Commissioner of Revenue of North Carolina.

District Court, W. D. North Carolina.
Aug. 19, 1931.

Robert R. Reynolds and Wm. B. Snow, both of Asheville, N. C., and Nicholls, Wyche & Russell, of Spartanburg, S. C. (Wm. B. Snow, of Asheville, N. C., and C. C. Wyche and Donald Russell, both of Spartanburg, S. C., on the brief), for complainant.

Dennis G. Brummitt, Atty. Gen., of North Carolina, for defendant.

Before PARKER, Circuit Judge, and WATKINS and WEBB, District Judges.

PARKER, Circuit Judge.

This is a suit to enjoin the commissioner of revenue of the state of North Carolina from enforcing against complainant and those similarly situated the provisions of section 121½ of the Revenue Act of North Carolina of 1931 (Pub. Laws 1931, c. 427). Complainant is the owner of a large peach orchard in the state of South Carolina, and during the season when peaches are ripening he operates 100 trucks in selling peaches in the western part of North Carolina, where there is no peach-growing industry. He has no permanent place of business in North Carolina, but peddles or sells the peaches from the trucks. The commissioner of revenue asserts that complainant is liable for a tax of $50 on each truck so operated and was threatening to collect the tax from complainant and enforce against him the penalties provided by the act, when complainant instituted this suit and obtained a temporary restraining order from the District Judge. A court of three judges was then convened pursuant to section 266 of the Judicial Code (28 USCA § 380), and an application for an interlocutory injunction to restrain the enforcement of the statute has been heard upon the bill and answer.

The sections of the statute, the enforcement of which complainant seeks to enjoin, are as follows:

"Sec. 121½. Peddlers of Fruits and Vegetables. (a) Any person, firm, or corporation who or which shall carry on the business of selling or offering for sale fresh fish, fresh fruits and/or vegetables, and who or which does not maintain a permanent place of business in this State, shall apply for in advance and procure from the Commissioner of Revenue a State license for each truck operated, and shall pay for such license a tax of fifty dollars ($50.00).

"(b) This section shall not apply to those persons, firms, or corporations selling or offering for sale fruits and/or vegetables, if such fruits and/or vegetables are grown in this State, or the fresh fish taken in the waters of the State.

"(c) Cities and towns may levy a license tax on the businesses taxed in this section not in excess of that levied by the State. No county may levy any license tax under this section.

"(d) Any person, firm, or corporation violating any of the provisions of this section shall be guilty of a misdemeanor, and upon conviction shall be fined or imprisoned in the discretion of the court: Provided, the fine shall not be less than twenty (20%) per cent of the tax in addition to the tax and costs."

Complainant filed his suit in behalf of himself and others similarly situated. He alleges in the bill that at least four hundred other persons are in the same plight and condition that he is and that a hundred or more of these have contributed to the expense of the litigation and are directly interested therein. He further alleges that he and the others in behalf of whom the suit is brought will suffer irreparable damage unless given relief against the enforcement of the stat-

ute, as they are unable to pay the tax and their crop of peaches will be lost to them unless they are allowed to sell through Western North Carolina, which section, with Eastern Tennessee, is the only practicable market that they have for their crop. He attacks the section of the statute which we have quoted as violative of the commerce clause, as well as other provisions of the Constitution of the United States, and invokes the equity jurisdiction of the court to prevent irreparable injury and to prevent a multiplicity of suits.

The commissioner of revenue has filed answer denying that the section of the statute attacked is violative of constitutional provisions, and denying also jurisdiction in equity to entertain the suit, on the ground that complainant has an adequate remedy at law under section 510 of chapter 427 of the acts of 1931, which authorizes payment of a controverted tax under protest and the institution of suit for its recovery. After careful consideration of the briefs and oral arguments, we have reached the conclusion that the tax is clearly unconstitutional in that it discriminates against and burdens interstate commerce, and that equity has jurisdiction to enjoin its enforcement on the ground of avoiding a multiplicity of suits.

■ On the first question, the constitutionality of the tax, it is of course well settled that a state may impose a tax on those carrying on the business of peddlers, even though the goods sold may have been brought into the state in interstate commerce, so long as there is no discrimination in the tax against the goods of other states. Howe Mach. Co. v. Gage, 100 U. S. 676, 678, 25 L. Ed. 754; Emert v. Missouri, 156 U. S. 296, 15 S. Ct. 367, 39 L. Ed. 430; Kehrer v. Stewart, 197 U. S. 60, 25 S. Ct. 403, 49 L. Ed. 663; American Steel & Wire Co. v. Speed, 192 U. S. 500, 24 S. Ct. 365, 48 L. Ed. 538; Wagner v. Covington, 251 U. S. 95, 102, 104, 40 S. Ct. 93, 64 L. Ed. 157. But the state may not, in its tax on peddlers or other taxes, discriminate against the products of other states. To do so is in effect to enact a protective tariff against the products of other states; and a tax which makes such discrimination is violative of clause 3 of section 8 of the first article of the Constitution of the United States, because it constitutes a burden upon interstate commerce. Welton v. Missouri, 91 U. S. 275, 279, 23 L. Ed. 347; Howe Mach. Co. v. Gage, supra; Guy v. Baltimore, 100 U. S. 434, 25 L. Ed. 743; Webber v. Virginia, 103 U. S. 344, 26 L. Ed. 565; Walling v. Michigan, 116 U. S. 446, 6 S. Ct. 454, 458, 29 L. Ed. 691; Darnell v. Memphis, 208 U. S. 113, 28 S. Ct. 247, 251, 52 L. Ed. 413; Bethlehem Motors Corp. v. Flynt, 256 U. S. 421, 41 S. Ct. 571, 65 L. Ed. 1029. The rule is thus tersely stated by Mr. Justice Swayne in Howe Mach. Co. v. Gage, supra: "A law which requires a license to be taken out by pedlers who sell articles not produced in the State, and requires no such license with respect to those who sell in the same way articles which are produced in the State, is in conflict with the power of Congress to regulate commerce with foreign nations and among the several States. This power applies to articles taken from one State into another, until they become mingled with and a part of the property of the latter, and thereafter protects such articles from any burden imposed by reason of their foreign origin."

In the leading case of Welton v. Missouri, supra, the Supreme Court dealt with a state license tax imposed upon peddlers of merchandise, but exempting from the tax persons selling goods which were the growth, product, or manufacture of the state. In holding the tax void as being in conflict with the commerce clause of the Constitution, the court, speaking through Mr. Justice Field, said: "The license tax exacted by the State of Missouri from dealers in goods which are not the product or manufacture of the State, before they can be sold from place to place within the State, must be regarded as a tax upon such goods themselves; and the question presented is, whether legislation thus discriminating against the products of other States in the conditions of their sale by a certain class of dealers is valid under the Constitution of the United States. * * * The power which insures uniformity of commercial regulation must cover the property which is transported as an article of commerce from hostile or interfering legislation, until it has mingled with and become a part of the general property of the country, and subjected like it to similar protection, and to no greater burdens. If, at any time before it has thus become incorporated into the mass of property of the state or nation, it can be subjected to any restrictions by State legislation, the object of investing the control in Congress may be entirely defeated. If Missouri can require a license tax for the sale by traveling dealers of goods which are the growth, product, or manufacture of other states or countries, it may require such license tax as a condition of their sale from

ordinary merchants, and the amount of the tax will be a matter resting exclusively in its discretion. The power of the State to exact a license tax of any amount being admitted, no authority would remain in the United States or in this court to control its action, however unreasonable or oppressive. Imposts operating as an absolute exclusion of the goods would be possible, and all the evils of discriminating State legislation, favorable to the interests of one State and injurious to the interests of other states and countries, which existed previous to the adoption of the Constitution, might follow, and the experience of the last fifteen years shows would follow, from the action of some of the States."

In Darnell v. Memphis, supra, the court said, quoting from Walling v. Michigan, supra: "A discriminating tax imposed by a state, operating to the disadvantage of the products of other states when introduced into the first-mentioned state, is, in effect, a regulation in restraint of commerce among the states, and as such is a usurpation of the power conferred by the Constitution upon the Congress of the United States."

In Walling v. Michigan, supra, the Supreme Court quoted with approval the following pertinent language from the opinion in State v. North & Scott, 27 Mo. 464: "But, whatever may be the motive for the tax, whether revenue, restriction, retaliation, or protection of domestic manufactures, it is equally a regulation of commerce, and in effect an exercise of the power of laying duties on imports, and its exercise by the states is entirely at war with the spirit of the constitution, and would render vain and nugatory the power granted to congress in relation to these subjects. Can any power more destructive to the union and harmony of the states be exercised than that of imposing discriminating taxes or duties on imports from other states? Whatever may be the motive for such taxes, they cannot fail to beget irritation and to lead to retaliation; and it is not difficult to foresee that an indulgence in such a course of legislation must inflame and produce a state of feeling that would seek its gratification in any measures, regardless of the consequences."

It is said that the tax complained of is imposed by subsection (a) of section 121½ of the statute, and that the exemption to persons selling fruits and vegetables grown within the state is given by subsection (b); and it is argued that, if this exemption cre-

ates a discrimination, the result is that not the tax but the exemption is void, since the act contains a provision that the unconstitutionality of any of its provisions shall not be held to affect the others. It is clear, however, that subsections (a) and (b) cannot be treated as independent sections of the act, but must be read together. Subsection (a) imposing the tax is followed by subsection (b), which provides that the tax shall not apply to persons selling fruits and vegetables grown within the state. There is thus no tax imposed upon such persons by the statute; and, if the state were to attempt to collect the tax from them, it would be a sufficient answer that the statute, by express provision, did not apply to them. As was well said by the Supreme Court of Maine in State v. Mitchell, 97 Me. 66, 53 A. 887, 890, 94 Am. St. Rep. 481, 487: "It may be suggested that, even if the clause cited be unconstitutional, the rest of the statute may not be, and that, the attempted exemption being of no force, all persons, including all those persons described in that clause as well as the defendant, are equally liable to pay the license fees. It is true that in some cases one section or provision of a statute may be held unconstitutional without invalidating the whole statute, but that cannot be done when it would violate the legislative intent. In this case it evidently was the clear intent of the legislature that the persons described in the clause cited should not pay license fees in any event. That clause is more than a matter of detail. It is an integral part of the statute, and affecting all that part requiring the payment of license fees. To hold that, because of the invalidity of that section, the persons the legislature therein enacted should not pay license fees must nevertheless pay such fees, is to violate a clearly expressed legislative intent; is to impose burdens the legislature explicitly declared should not be imposed."

The principles of law applicable in such a case are well stated in 6 R. C. L. 129 as follows: "One important class of cases in which questions as to the severability of valid and invalid portions of an act, and the determination of the legislative intent are involved, consists of statutes containing invalid exceptions or provisos. The general rule is that if such proviso operates to limit the scope of the act in such manner that by striking out the proviso, the remainder of the statute would have a broader scope either as to subject or territory, then the whole act is invalid, because such extended opera-

tion would not be in accordance with the legislative intent. Instances of the application of this rule may be found in the case of statutes prohibiting trusts or combinations to fix prices or restrict the production of articles of commerce, but excepting from the prohibitions all persons engaged in agriculture or horticulture; requiring all hawkers and peddlers to pay a license fee, but exempting all residents of a town who pay taxes amounting to twenty-five dollars on their stock of goods; and exempting designated cities from the operation of a general law. In all such cases the exception of a particular group from the provisions of a general statute may have been a material consideration with the legislature in the passage of the act, and the courts may properly infer that it would not have been enacted if such group had not been excluded from its operation and protected from its provisions."

And what was said by Mr. Justice Van Devanter in Davis v. Wallace, 257 U. S. 478, 484, 42 S. Ct. 164, 166, 66 L. Ed. 325, in dealing with a North Dakota statute taxing railroads, is applicable here. Said he: "Where an excepting provision in a statute is found unconstitutional, courts very generally hold that this does not work an enlargement of the scope or operation of other provisions with which that provision was enacted, and which it was intended to qualify or restrain. The reasoning on which the decisions proceed is illustrated in State ex rel. McNeal v. Dombaugh, 20 Ohio St. 167, 174. In dealing with a contention that a statute containing an unconstitutional proviso should be construed as if the remainder stood alone, the court there said: 'This would be to mutilate the section and garble its meaning. The legislative intention must not be confounded with the power to carry that intention into effect. To refuse to give force and vitality to a provision of law is one thing, and to refuse to read it is a very different thing. It is by a mere figure of speech that we say an unconstitutional provision of a statute is "stricken out." For all the purposes of construction it is to be regarded as part of the act. The meaning of the Legislature must be gathered from all they have said, as well from that which is ineffectual for want of power as from that which is authorized by law.'" And see Frost v. Corporation Commission, 278 U. S. 515, 525, 49 S. Ct. 235, 73 L. Ed. 483.

We come, then, to the question as to whether jurisdiction in equity must be denied on the ground that there is an adequate remedy at law. Defendant, as stated, relies upon the provisions of section 510 of the Revenue Act N. C. 1931, which authorizes the payment under protest of a controverted tax and suit for its recovery, with a provision that interest may be recovered as well as principal, and that, in the case of the recovery of a judgment for taxes paid the state, same shall be refunded by the state. The statute provides a remedy available in the federal courts as well as in the courts of the state; and the right of a taxpayer to recover thereunder has been inferentially recognized by the Supreme Court of the state in entertaining an action instituted thereunder and deciding the case presented on the merits. Great Atlantic & Pacific Tea Co. v. Maxwell, 199 N. C. 433, 154 S. E. 838. The statute is free of ambiguity and the rights of the taxpayer are clear. There is no such uncertainty, therefore, as confronted the taxpayer in Atlantic C. L. R. Co. v. Doughton, 262 U. S. 413, 43 S. Ct. 620, 67 L. Ed. 1051, and Union Pac. R. Co. v. Board of Com'rs of Weld County, 247 U. S. 282, 38 S. Ct. 510, 62 L. Ed. 1110; and, if the case involved only the rights of a single taxpayer and the question were not presented as to the inability of the taxpayer to pay the tax, we should feel constrained to hold that the remedy at law thus provided was adequate and that suit for injunction would not lie. Henrietta Mills v. Rutherford County, 281 U. S. 121, 50 S. Ct. 270, 74 L. Ed. 737; Singer Sewing Machine Co. v. Benedict, 229 U. S. 481, 33 S. Ct. 942, 57 L. Ed. 1288; Southern Ry. Co. v. Query (D. C.) 21 F.(2d) 333.

The case is not one, however, involving merely the right of a single taxpayer. It is a class suit instituted in behalf of a large number of peach growers affected by the statute; and we think that it may be maintained in equity for the purpose of avoiding the multiplicity of suits which would otherwise result. Whatever may have been the rule formerly as to the right to maintain a class suit of this character in the federal courts, we think that, since the adoption of the 38th Equity Rule (28 USCA § 723), the right to maintain such a suit cannot be denied. Little v. Tanner (D. C.) 208 F. 605; Everglades Drainage League v. Broward (D. C.) 253 F. 246, 252; Risley v. City of Utica (C. C.) 173 F. 502, 506. And, if such suit may be maintained, there can be no question but that it is speedier, more efficacious, and more satisfactory for all parties concerned than the institution of a hundred or more actions at law for the recovery of taxes paid under pro-

test. The remedy provided by the statute cannot, therefore, in view of the situation, be deemed an adequate remedy as compared with the suit in equity which eliminates so much useless and cumbersome litigation. While the federal courts should be slow to exercise their injunctive power against the collection of taxes by the state where any other method of relief is open to the taxpayer (see State R. R. Tax Cases, 92 U. S. 575, 23 L. Ed. 663), there is no reason why they should not exercise it in a case such as this, where the taxing statute is clearly and unmistakably unconstitutional and where the refusal to grant the injunction will necessarily result in a multiplicity of suits and great burden and expense to the parties.

It is well settled that for the purpose of avoiding a multiplicity of suits equity will enjoin the enforcement of an unconstitutional taxing statute. Dows v. Chicago, 11 Wall. 108, 20 L. Ed. 65; Cummings v. Merchants' National Bank, 101 U. S. 153, 25 L. Ed. 903; Ogden City v. Armstrong, 168 U. S. 224, 18 S. Ct. 98, 103, 42 L. Ed. 444; Raymond v. Chicago Union Traction Co., 207 U. S. 20, 28 S. Ct. 7, 52 L. Ed. 78, 12 Ann. Cas. 757; U. S. v. Board of Com'rs of Osage County, 251 U. S. 128, 40 S. Ct. 100, 64 L. Ed. 184. The only question is whether the prevention of such multiplicity as would result from members of a class paying an unconstitutional tax and bringing suits for recovery thereof comes within the rule and justifies the awarding of an injunction in a suit brought in behalf of the members of the class. We think that it does. While there is authority to the contrary (see Cutting v. Gilbert, Fed. Cas. No. 3519; Youngblood v. Sexton, 32 Mich. 406, 20 Am. Rep. 654), reason and the overwhelming weight of authority sustain this jurisdiction in equity.

In Ogden City v. Armstrong, supra, a suit was filed by certain property owners in behalf of themselves and others similarly situated to restrain the officials of a city from selling real estate in satisfaction of paving assessments. One of the objections to jurisdiction was that plaintiffs should have sought relief at law and not in equity. After pointing out that the remedy by certiorari was not adequate, the court went on to say: "Not only, however, was there a want of an adequate remedy in proceeding by a writ of certiorari, but we think equitable jurisdiction was properly invoked to prevent a multiplicity of suits, and also to relieve the plaintiffs from a cloud upon their title."

In Little v. Tanner (D. C.) 208 F. 605, 609, a number of persons joined in a bill seeking an injunction against the enforcement of a taxing statute of the state of Washington. Motion was made to quash the bill on a number of grounds including misjoinder of parties and causes of action and that complainants had an adequate remedy at law. The joinder was sustained under Equity Rule 38; and on the point that there was an adequate remedy at law the court, speaking through the late Judge Rudkin, used language which is peculiarly appropriate to the facts here. Said he: "When we consider the real object of this suit, the vast numbers affected by it, the severity of the penalties imposed, the unauthorized interference with legitimate business methods, and that goods now in original packages containing stamps and other devices are rendered practically valueless, the case seems to call peculiarly for the intervention of a court of equity. The motion to quash and the motion to dismiss are accordingly overruled." The Supreme Court reversed the decision of the lower court on the merits, but concurred with it on the question of jurisdiction. Tanner v. Little, 240 U. S. 369, 380, 36 S. Ct. 379, 60 L. Ed. 691.

The rule supported by the weight of authority is well stated by the Supreme Court of Missouri in Ranney v. Bader, 67 Mo. 476, as follows: "Equity will maintain jurisdiction to prevent multiplicity of suits, and no stronger case could be put for entertaining jurisdiction under this rule, than is presented, when one taxpayer for himself and all other taxpayers of a township or county, similarly interested, brings his bill, asking the chancellor to put forth restraining process to prevent the imposition and collection of an unauthorized tax, and thus settle in one suit, what it would take hundreds and, perhaps, thousands to do, if such relief were denied, and the parties subjected to the payment of such tax were driven, each one, to his action at law for redress."

In Chicago v. Collins, 175 Ill. 445, 51 N. E. 907, 909, 49 L. R. A. 408, 67 Am. St. Rep. 224, suit was brought by 373 complainants, in behalf of themselves and others similarly situated, to enjoin the enforcement of an ordinance imposing a license fee on vehicles. It was objected that there was an adequate remedy at law by paying the fee and suing to recover it. In sustaining the jurisdiction in equity, the court said: "No inflexible rule can be laid down for the determination of the question as to whether jurisdiction exists

in a court of equity. In general, an adequate legal remedy will suffice to make such courts hesitate in acting. But inadequacy in granting relief for the determination of a right may arise from causes other than mere forms of remedy, and it will not do to sacrifice justice on the mere ground of the form of the remedy, where convincing facts show that adequate relief can best be had in the forum of a court of equity. In this case 373 complainants present facts showing that between 200,000 and 300,000 citizens and taxpayers are affected by the provisions of the ordinance, and, if compelled to pay the illegal tax, hardship and injustice will result to an enormous number of persons. If they pay the tax, and are compelled to resort to a court of law to recover back the amount so paid, the business of the courts will be obstructed by the number of actions of the same character. Long delay will ensue, and the costs to the persons so paying such illegal tax or license fee will be greater than the amount to be recovered. Under any circumstance, if the license exacted is illegal, it would amount to oppression and injustice to a large part of the population of the city of Chicago, and this bill presents a case for the jurisdiction of a court of equity."

In Carlton v. Newman, 77 Me. 408, 1 A. 194, 195, involving the right to maintain a class suit to enjoin the enforcement of a school district tax, the court, while holding to its general rule as to the adequacy of a legal remedy, said: "But we are of opinion that when it appears that an entire school-district tax is illegal, because assessed without authority of law, a bill to enjoin its collection, brought by all of the tax-payers of the district, jointly, on whose polls and estates the tax has been assessed, or by any number thereof on behalf of themselves and all the others similarly situated, may be sustained upon the ground of inherent jurisdiction of equity to interpose for the purpose of preventing a multiplicity of suits; that, although each tax-payer has some legal remedy, it is grossly inadequate when compared with the comprehensive and complete relief afforded by a single decree." And see Fairley v. Duluth, 150 Minn. 374, 185 N. W. 390, 32 A. L. R. 1258; Williams' v. County Court, 26 W. Va. 488, 53 Am. Rep. 94; Missouri, K. & T. R. Co. v. Shannon, 100 Tex. 379, 100 S. W. 138, 10 L. R. A. (N. S.) 681; Sherman v. Benford, 10 R. I. 559; Bull v. Read, 13 Grat. (Va.) 78; Glenn v. Waddel, 23 Ohio St. 605; Little Rock v. Prather, 46 Ark. 471; Wilkie v. Chicago, 188 Ill. 444, 58 N. E.

1004, 80 Am. St. Rep. 182; Hewin v. Atlanta, 121 Ga. 723, 49 S. E. 765, 67 L. R. A. 795, 2 Ann. Cas. 296; 26 R. C. L. 461, 462; note 22 L. R. A. 703; note 32 A. L. R. 1266 et seq.; Pomeroy's Equity Jurisprudence (4th Ed.) vol. 1, § 260 and notes.

Professor Pomeroy, in his Equity Jurisprudence (4th Ed.) vol. 1, p. 450 et seq., thus states his conclusions with respect to the rule and the authorities sustaining it: "In a large number of the states the rule has been settled in well-considered and often-repeated adjudications by courts of the highest character for ability and learning, that a suit in equity will be sustained when brought by any number of tax-payers joined as co-plaintiffs, or by one tax-payer suing on behalf of himself and all others similarly situated, or sometimes even by a single tax-payer suing on his own account, to enjoin the enforcement and collection, and to set aside and annul, any and every kind of tax or assessment laid by county, town, or city authorities, either for general or special purposes, whether it be entirely personal in its nature and liability, or whether it be made a lien on the property of each taxpayer, whenever such tax is illegal. * * * In the face of every sort of objection urged against a judicial interference with the governmental and executive function of taxation, these courts have uniformly held that the legal remedy of the individual tax-payer against an illegal tax, either by action for damages, or perhaps by certiorari, was wholly inadequate; and that to restrict him to such imperfect remedy would, in most instances, be a substantial denial of justice, which conclusion is, in my opinion, unquestionably true. The courts have therefore sustained these equitable suits, and have granted the relief, and have uniformly placed their decision upon the inherent jurisdiction of equity to interfere for the prevention of a multiplicity of suits. The result has demonstrated the fact that complete and final relief may be given to an entire community by means of one judicial decree, which would otherwise require an indefinite amount of separate litigation by individuals, even if it were attainable by any means. In several of the states there is a long series of these cases, extending through a considerable period of time, and it may well happen that in the earliest decisions of such a series the court has stated the reasons for its judgment at large, and has expressly announced the principle of preventing a multiplicity of suits as the ground of its jurisdiction, while in the suc-

ceeding ones the judges have not thought it necessary to repeat the reasons and ground which had already been fully explained. It is plain that the latter cases, no less than the former ones, are an authority for the doctrine under examination. In all these suits by lot-owners to be relieved from a local assessment, and by tax-payers to be relieved from a tax or burden of public debt, there is no pretense of any privity, or existing legal relation, or common property or other right, among the plaintiffs individually, or between them as a body and the defendant. There is no common right of the single adversary party against them all, as is found in the case of a parson against his parishioners for tithes, or of the lord of a manor against his tenants for a general fine, or for certain rights of common; nor is there any common right or interest among them against their single adversary. The only community among them is in the questions at issue to be decided by the court; in the mere external fact that all their remedial rights arose at the same time, from the same wrongful act, are of the same kind, involve similar questions of fact, and depend upon the same questions of law. This sort of community is sufficient, in the opinion of so many and so able courts, to authorize and require the exercise, under such circumstances, of the equitable jurisdiction, in order to prevent a multiplicity of suits."

No question is raised as to the jurisdictional amount; and it clearly appears that such amount is involved by reason of the fact that complainant operates 100 trucks upon which the tax would be $5,000. Of course, where the tax involved as to any complainant does not equal the jurisdictional amount, jurisdiction must fail; for it is well settled that the interest of the parties, joined for the purposes of convenience, cannot be aggregated for the purpose of conferring jurisdiction. Wheless v. St. Louis, 180 U. S. 379, 21 S. Ct. 402, 45 L. Ed. 583; Russell v. Stansell, 105 U. S. 303, 26 L. Ed. 989; Georgia Power Co. v. Hudson (C. C. A. 4th) 49 F.(2d) 66.

For the reasons stated, we think that the statute complained of is void because in conflict with the commerce clause of the Constitution, and that complainant is entitled to the interlocutory injunction prayed. Injunction will issue, therefore, restraining defendant from enforcing against complainant and the other peach growers of South Carolina in behalf of whom the suit is prosecuted the provisions of section 121½ of the Revenue Act of North Carolina of 1931, from attempting to collect from them the tax prescribed by that section, and from instituting against them prosecutions thereunder for engaging in the business therein specified without payment of the tax.

Interlocutory injunction granted.